UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ANDERSON BUCKMIRE and JUSTIN NARDONE, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>LASERSHIP, INC.,<br><br>               Defendant. | Case No. 1:20-cv-01493-RDA-IDD<br><br>Hon. Rossie D. Alston, Jr. |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO COMPEL ARBITRATION**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 1

    A.   LaserShip ......................................................................................................... 1

    B.   The Arbitration Provision ................................................................................ 3

    C.   Plaintiffs' Claims ............................................................................................. 5

III.  ARGUMENT .............................................................................................................. 6

    A.   The Virginia Uniform Arbitration Act Controls. .......................................... 6

    B.   Like the Federal Arbitration Act, Virginia Law Favors Arbitration. ...................... 7

    C.   The Parties Delegated Nearly All Issues Regarding the Scope of the
          Arbitration Agreement to the Arbitrator. ................................................. 8

    D.   The Arbitration Provision Waives Class Proceedings and that Waiver Is
          Enforceable. ................................................................................................ 9

IV.   CONCLUSION .......................................................................................................... 13

## TABLE OF AUTHORITIES

### Cases

*Abram v. C.R. England, Inc.*,
  2020 WL 5077373 (C.D. Cal. June 23, 2020) .......................................................................... 7

*Ahern v. Toll Bros.*,
  55 Va. Cir. 18 (2001) ....................................................................................................... 7, 8, 9

*Am. Exp. Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ............................................................................................................... 9

*Arafa v. Health Express Corp.*,
  2020 WL 3966956 (D.N.J. July 14, 2020) ............................................................................. 7

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................................................................. 12

*Atwood v. Rent-A-Ctr. E., Inc.*,
  2016 WL 2766656 (S.D. Ill. May 13, 2016) .......................................................................... 7

*Augusta Lumber Co. v. Broad Run Holdings, LLC*,
  71 Va. Cir. 326 (2006) ......................................................................................................... 12

*Bolton v. McKinney*,
  97 Va. Cir. 7 (2017) ............................................................................................................... 8

*Byars v. Dart Transit Co.*,
  414 F. Supp. 3d 1082 (M.D. Tenn. 2019) .............................................................................. 6

*Casey v. Merck & Co.*,
  283 Va. 411, 722 S.E.2d 842 (2012) ..................................................................................... 9

*Cilluffo v. Cent. Refrigerated Servs., Inc.*,
  2012 WL 8523507 (C.D. Cal. Sept. 24, 2012) ...................................................................... 6

*Circuit City Stores v. Adams*,
  532 U.S. 105 (2001) ............................................................................................................... 6

*Diaz v. Michigan Logistics Inc.*,
  167 F. Supp. 3d 375 (E.D.N.Y. 2016) ................................................................................... 7

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ......................................................................................................... 12

*Faltings v. Int'l Bus. Machs. Corp.*,
  1988 WL 83316 (4th Cir. Aug. 4, 1988) ............................................................................... 9

*Garza Nunez v. Weeks Marine, Inc.*,
  2007 WL 496855 (E.D. La. Feb. 13, 2007) ........................................................................ 7

*Green v. U.S. Xpress, Enters., Inc.*,
  434 F. Supp. 3d 633 (E.D. Tenn. 2020) ............................................................................. 6

*In re Volkswagen "Clean Diesel" Litig.*,
  94 Va. Cir. 189 (2016) ...................................................................................................... 9

*Kay Jennings Family Ltd. P'ship v. DAMN, LLC*,
  71 Va. Cir. 348 (2006) ...................................................................................................... 8

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ......................................................................................................... 11

*Klein v. Verizon Commc'ns, Inc.*,
  674 F. App'x 304 (4th Cir. 2017) ..................................................................................... 11

*L-3 Commc'ns Corp. v. Serco, Inc.*,
  926 F.3d 85 (4th Cir. 2019) ............................................................................................. 11

*Marks v. Marks*,
  36 Va. App. 216, 548 S.E.2d 919 (2001) .................................................................... 8, 12

*Merrill v. Pathway Leasing, LLC*,
  2019 WL 1915597 (D. Colo. Apr. 29, 2019) ..................................................................... 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ........................................................................................................... 8, 9

*New Prime Inc. v. Oliveira*,
  139 S. Ct. 532 (2019) ........................................................................................................ 6

*Palcko v. Airborne Express, Inc.*,
  372 F.3d 588 (3d Cir. 2004) .............................................................................................. 6

*Precision Pipeline, LLC v. Dominion Transmission, Inc.*,
  No. 3:16-CV-00180, 2017 WL 1100903 (E.D. Va. Mar. 23, 2017) ............................ 9, 11

*Rittmann v. Amazon.com, Inc.*,
  971 F.3d 904 (9th Cir. 2020) ............................................................................................ 6

*Roberts v. Cent. Refrigerated Serv.*,
  27 F. Supp. 3d 1256 (D. Utah 2014) ................................................................................. 6

*Sabo v. Dennis*,
  408 Ill. App. 3d 619, 948 N.E.2d 121 (2011) .................................................................... 8

*Sanchez v. Lasership, Inc.*,
  No. 1:12CV246 GBL/TRJ, 2012 WL 3730636 (E.D. Va. Aug. 27, 2012) ....................... 10

*Sanders v. Certified Car Ctr., Inc.*,
  93 Va. Cir. 404 (2016) ........................................................................................ 7

*Schuiling v. Harris*,
  286 Va. 187, 747 S.E.2d 833 (2013) ................................................................. 7

*Shanks v. Swift Transp. Co., Inc.*,
  2008 WL 2513056 (S.D. Tex. June 19, 2008) .................................................. 6

*Smith v. Allstate Power Vac, Inc.*,
  2020 WL 5086584 (E.D.N.Y. Aug. 26, 2020) .................................................. 6

*TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.*,
  263 Va. 116, 557 S.E.2d 199 (2002) ................................................................. 7

*Tucker v. Ford Motor Co.*,
  72 Va. Cir. 420  (2007) ....................................................................................... 8

*Valdes v. Swift Transp. Co. Inc.*,
  292 F. Supp. 2d 524 (S.D.N.Y. 2003) ............................................................... 6

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989) ........................................................................................... 6

*Wade v. Danek Med., Inc.*,
  182 F.3d 281 (4th Cir. 1999) ............................................................................. 9

*Waithaka v. Amazon.com, Inc.*,
  966 F.3d 10 (1st Cir. 2020) ........................................................................... 6, 11

*Waterfront Marine Const., Inc. v. N. End 49ers Sandbridge Bulkhead Groups A, B & C*,
  251 Va. 417, 468 S.E.2d 894 (1996) ............................................................. 8, 12

## Statutes

9 U.S.C. § 1 ........................................................................................... 3, 6, 8
9 U.S.C. § 2 ............................................................................................. 11, 12
Va. Code § 8.01-581.01 .................................................................... 7, 11, 12, 13

Defendant, LaserShip, Inc. (LaserShip), submits this Memorandum of Law in Support of its Motion to Compel Arbitration.

## I.      INTRODUCTION

The Court should compel Plaintiffs to individual, bilateral arbitration. Plaintiffs each signed an Independent Contractor Agreement in which they agreed that they would arbitrate any claims they may have against LaserShip, including those that they advance here. The Virginia Uniform Arbitration Act (VUAA) governs the arbitration provision. Just as the Federal Arbitration Act (FAA) evinces a liberal policy favoring arbitration agreements, the VUAA and Virginia courts favor the enforcement of agreements to arbitrate. And like the FAA, the VUAA gives effect to delegation provisions in an arbitration agreement. Here, Plaintiffs and LaserShip agreed that the arbitrator—not the Court—would decide all issues except one: whether the class waiver is enforceable. The Court should conclude that the class waiver is enforceable and order Plaintiffs to individual, bilateral arbitration.

## II.     BACKGROUND

### A.      LaserShip

LaserShip is headquartered in Vienna, Virginia. *See Declaration of Didier Milongo (Milongo Decl.)*, ¶ 2, filed as an attachment to this motion. LaserShip provides transportation logistics services, arranging for the delivery of packages throughout the Midwest and East Coast of the United States for a variety of retailers and e-commerce companies. *Id.* LaserShip maintains facilities in Virginia and several other states on the East Coast and throughout the Midwest, including Massachusetts. *Id.* Its facility in Woburn, Massachusetts services the Massachusetts region. *Id.*

LaserShip contracts with independent contractors to perform deliveries for its customers. *Id.*, ¶ 3. These independent contractors include individuals, independent businesses such as sole

proprietorships or corporations, and other entities. *Id.* Independent contractors based at the Woburn, Massachusetts facility deliver packages to locations in Massachusetts and New Hampshire. *Id.*

Individuals seeking to contract with LaserShip as independent contractors can review the Independent Contractor Agreement in advance either on paper or electronically. *Id.*, ¶ 4. Prospective contractors can, and do, read and ask questions regarding the Independent Contractor Agreement. *Id.* They can also request a hard copy of the Independent Contractor Agreement and review it for as long as they want before deciding whether to sign it. *Id.* Individuals can consult with anyone they want—including family, friends, or legal counsel—regarding whether they should sign the Independent Contractor Agreement. *Id.*

LaserShip periodically reviews and revises the Independent Contractor Agreement. *Id.*, ¶ 5. When it updates the Independent Contractor Agreement, LaserShip provides the updated Independent Contractor Agreement to current independent contractors. *Id.* Just as when they signed their original agreement, current independent contractors are free to (1) review the updated agreement, (2) ask questions regarding the updated agreement, and (3) request a hard copy of the updated agreement and review it for as long as they want including consulting with family, friends, or legal counsel before deciding whether to agree to its terms by signing it. *Id.*

Buckmire executed an Independent Contractor Agreement on November 19, 2018 and executed an updated version on May 16, 2019. *Id.*, ¶ 7; *see also Exhibit A* to the *Milongo Decl.* (2018 Buckmire Independent Contractor Agreement), *Exhibit B* to the *Milongo Decl.* (2019 Buckmire Independent Contractor Agreement). Nardone executed an Independent Contractor Agreement on August 13, 2018 and executed an updated version on May 17, 2019. *Id.*; *see also Exhibit C* to the *Milongo Decl.* (2018 Nardone Independent Contractor Agreement), *Exhibit D* to the *Milongo Decl.* (2019 Nardone Independent Contractor Agreement).

**B.     The Arbitration Provision**

Plaintiffs' 2019 Independent Contractor Agreements contain the same arbitration provision:

> 22. <u>Dispute Resolution</u>. **Section 22 of this Agreement requires each party to arbitrate any claims it may have against the other. That provision prohibits the parties from bringing class, collective, consolidated, or representative actions against each other, and waives the parties' right to a jury trial (the "Arbitration Provision"). The Arbitration Provision is optional and not a condition of this Independent Contactor Agreement. Contractor may opt out of the agreement to arbitrate if it so chooses.**
>
> a. <u>Disputes Covered by this Arbitration Provision</u>. Except as provided in Section 22(b), any dispute (including any request for preliminary or other injunctive relief) between the Parties existing at the time this Arbitration Provision is signed or arising out of or relating to any acts, omissions, conditions, or events during the term of this Arbitration Provision, including but not limited to those arising out of or relating to any Transportation Agreement or other services agreement between the Parties or to any claim of breach of contract, tort, fraud, or other violation or cause of action under the statutes, regulations, common law, or other requirements of any applicable government authorities, whether local, state, Federal, or foreign, including but not limited to the Fair Labor Standards Act, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Employee Retirement Income Security Act, and other Federal labor, employment, or transportation law, and State labor, employment, or transportation law (together, "Claims"), shall be submitted to final and binding arbitration to be administered by the American Arbitration Association ("AAA" or the "Administrator") in accordance with (a) the Commercial Arbitration Rules (and related arbitration rules governing requests for preliminary or other injunctive relief) of the AAA, copies of which are available online at www.adr.org or from LaserShip upon request, or of such other arbitration organization as the Parties agree on in writing, (b) the Federal Arbitration Act (9 U.S.C. § 1 et seq.), with respect to which the Parties agree that this Arbitration Provision is not exempt, or if the Federal Arbitration Act is held not to control the arbitration, the arbitration laws of the State of Virginia, and (c) the procedures set forth herein. If for any reason the AAA is unable to serve as the arbitration administer, JAMS shall serve as the administrator (in the event JAMS is also unable to serve as the arbitration administer, the Parties shall confer in good faith to mutually select an arbitration administer). Nothing contained in this Arbitration Provision shall be construed to prevent or excuse Contractor from utilizing any procedure for resolution of complaints established in any other agreement between the Parties (if any), and this Arbitration Provision is not intended to be a substitute for the utilization of such procedures.

*2019 Independent Contractor Agreement*, § 22(a) (bolding in original).[1]

The arbitration provision delegates almost all issues to the arbitrator:

> c. <u>Issues Delegated to an Arbitrator</u>. An arbitrator shall decide all issues arising out of or relating to the interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of this Arbitration Provision or any portion of it, except the issue of the availability of class, collective, consolidated, or representative arbitration of claims, which issue shall be reserved.

*2019 Independent Contractor Agreement*, § 22(c).

The arbitration provision also includes an explicit class and collective waiver:

> d. **This Arbitration Provision Waives Class, Collective, Consolidated, And Representative Actions.** THE PARTIES AGREE THAT NO CLASS, COLLECTIVE, CONSOLIDATED, OR REPRESENTATIVE ARBITRATION OF CLAIMS SHALL BE ALLOWED AND THAT THE ARBITRATOR IS NOT EMPOWERED TO CERTIFY, CONDUCT, OR AWARD RELIEF IN ANY SUCH ARBITRATION. IF A COURT OR ARBITRATOR NEVERTHELESS ALLOWS OR REQUIRES A CLASS, COLLECTIVE, CONSOLIDATED, OR REPRESENTATIVE ARBITRATION, THE PARTIES AGREE THAT SUCH A DETERMINATION IS IMMEDIATELY APPEALABLE TO THE STATE OR FEDERAL COURTS SERVING THE CITY OF FAIRFAX, IN THE STATE OF VIRGINIA, AS CONTRARY TO THE INTENT OF THE PARTIES IN ENTERING INTO THIS ARBITRATION PROVISION AND THAT ALL ARBITRAL PROCEEDINGS, INCLUDING DISCOVERY, SHALL BE STAYED PENDING APPEAL. IN THE EVENT THE DETERMINATION IS NOT REVERSED ON APPEAL, THE PARTIES AGREE THAT THIS ARBITRATION PROVISION IN ITS ENTIRETY, AND ANY PRIOR OR SUBSEQUENT ARBITRATION AWARD UNDER IT, SHALL BE NULL AND VOID, AND ANY CLAIMS BETWEEN THE PARTIES SHALL BE RESOLVED BY COURT ACTION, NOT ARBITRATION, IN THE FOREGOING STATE OR FEDERAL COURTS. IF AT ANY POINT THIS PROVISION IS DETERMINED TO BE UNENFORCEABLE, THE PARTIES AGREE THAT THIS PROVISION SHALL NOT BE SEVERABLE AND THAT THE ENTIRETY OF SECTION 22 SHALL BE NULL AND VOID, UNLESS IT IS DETERMINED THAT THE ARBITRATION WILL NEVERTHELESS PROCEED ON AN INDIVIDUAL BASIS ONLY.

---

[1] Section 22(b) of the Independent Contractor Agreement identifies four categories of disputes to which the arbitration provision does not apply; none of those categories apply in this case.

*2019 Independent Contractor Agreement*, § 22(d) (bolding in original).

Finally, Plaintiffs had the right to opt out of the arbitration provision 15 days after the effective date of the Independent Contractor Agreement:

> i. <u>Contractor's Right to Opt Out of this Arbitration Provision</u>. Arbitration is not a mandatory condition of Contractor's relationship with LaserShip. If Contractor does not want to be subject to this Arbitration Provision, Contractor may opt out of this Arbitration Provision by notifying LaserShip in writing of such desire within fifteen (15) days of the Effective Date of this Agreement, which writing must be delivered by U.S. Mail, or by any nationally recognized delivery service (FedEx, etc.), or by hand delivery to LaserShip, Inc., 1912 Woodford Road, Vienna, VA 22182, ATTN: Delivery Resources. The original or a copy of Contractor's notice shall be maintained by LaserShip. Such unilateral election by Contractor shall not result in termination of this Agreement or any other agreement between the Parties or any form of penalty, retaliation, or disadvantaging of Contractor by LaserShip.

*2019 Independent Contractor Agreement*, § 22(i).

Buckmire and Nardone elected not to opt out of the arbitration provision. *Milongo Decl.*, ¶ 8.

###    C.    Plaintiffs' Claims

On December 4, 2020, Plaintiffs sued LaserShip in the Eastern District of Virginia. *See Complaint, Compensatory and Injunctive Relief Requested, Proposed Class Action (Complaint)* (ECF No. 1). They allege Lasership misclassified them as independent contractors under Massachusetts law. *Complaint*, ¶ 1. They further allege that (1) LaserShip made improper deductions and forced Plaintiffs to bear business expenses in violation of the Massachusetts Wage Payment Act, M.G.L. ch.149, §148; (2) LaserShip failed to pay overtime in violation of Massachusetts Overtime Law, M.G.L. ch.151, §1A; and (3) LaserShip unjustly enriched itself by forcing Plaintiffs to pay for "work-related expenses . . . normally borne by an employer." *Complaint*, ¶¶ 35-39. They seek to represent a class of all "individuals who have performed delivery services for LaserShip within Massachusetts and have been subjected to the legal violations described in this complaint." *Complaint*, ¶ 7.

## III.   ARGUMENT

### A.   The Virginia Uniform Arbitration Act Controls.

Agreements to arbitrate may be enforced under the Federal Arbitration Act (FAA) or applicable state law. *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476–79 (1989). The FAA exempts from its provisions "contracts of employment of [transportation workers] engaged in foreign or interstate commerce." 9 U.S.C. §§ 1; see *Circuit City Stores v. Adams*, 532 U.S. 105, 119 (2001). This "transportation worker" exemption applies to a (1) "transportation worker" with a (2) "contract of employment" who is (3) "engaged in foreign or interstate commerce." In *New Prime Inc. v. Oliveira,* 139 S. Ct. 532 (2019), the U.S. Supreme Court held that independent contractor drivers have "contracts of employment" because the phrase "contract of employment" simply means an "agreement to work." Unlike the courts in *New Prime* and other cases—*see, e.g., Waithaka v. Amazon.com, Inc.,* 966 F.3d 10 (1st Cir. 2020), *Rittmann v. Amazon.com, Inc.,* 971 F.3d 904 (9th Cir. 2020)—here the Court need not grapple with the FAA's transportation worker exemption because LaserShip seeks to compel arbitration under the VUAA, which contains no similar exemption.

Even if the arbitration agreement in this case is outside the FAA, that does not affect this Court's power to enforce the parties' agreement and compel arbitration under the VUAA. Indeed, the weight of authority illustrates that federal courts routinely compel arbitration under state law when the FAA's transportation worker exemption applies. *See, e.g., Byars v. Dart Transit Co.*, 414 F. Supp. 3d 1082, 1088-89 (M.D. Tenn. 2019), *reconsideration denied*, 2019 WL 9997347 (M.D. Tenn. Nov. 5, 2019); *Green v. U.S. Xpress, Enters., Inc.*, 434 F. Supp. 3d 633 (E.D. Tenn. 2020).[2]

---

[2] *Merrill v. Pathway Leasing, LLC*, 2019 WL 1915597 (D. Colo. Apr. 29, 2019); *Roberts v. Cent. Refrigerated Serv.*, 27 F. Supp. 3d 1256 (D. Utah 2014); *Cilluffo v. Cent. Refrigerated Servs., Inc.*, 2012 WL 8523507 (C.D. Cal. Sept. 24, 2012); *Shanks v. Swift Transp. Co., Inc.*, 2008 WL 2513056, at *4 (S.D. Tex. June 19, 2008); *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004); *Valdes v. Swift Transp. Co. Inc.*, 292 F. Supp. 2d 524, 529 (S.D.N.Y. 2003); *Smith v.*

Here, Plaintiffs' Independent Contractor Agreements specifically provide that Virginia's arbitration laws control in the absence of the FAA. *2019 Independent Contractor Agreement*, 22(a).[3] Accordingly, there is no doubt the Court can—and should—compel arbitration under the VUAA.

### B.    Like the Federal Arbitration Act, Virginia Law Favors Arbitration.

Under the VUAA, a "written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract." Va. Code § 8.01-581.01. "[T]he public policy of Virginia favors arbitration." *TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.*, 263 Va. 116, 122, 557 S.E.2d 199, 202 (2002). The VUAA is meant to "illustrate[] Virginia's public policy in favor of arbitration and the validity of arbitration agreements." *Id.*; *Schuiling v. Harris*, 286 Va. 187, 192, 747 S.E.2d 833, 835 (2013). Accordingly, "any written arbitration agreement is presumed valid and enforceable under Virginia law, unless the objecting party is able to present grounds upon which the contract should be revoked or not enforced." *Sanders v. Certified Car Ctr., Inc.*, 93 Va. Cir. 404 (2016).

Additionally, with the exception of the transportation worker exemption, "[i]n all material respects, the Virginia Uniform Arbitration Act is similar to the Federal Arbitration Act." *Ahern v.*

---

*Allstate Power Vac, Inc.*, 2020 WL 5086584, at *5 (E.D.N.Y. Aug. 26, 2020); *Arafa v. Health Express Corp.*, 2020 WL 3966956, at *13 (D.N.J. July 14, 2020); *Abram v. C.R. England, Inc.*, 2020 WL 5077373, at *5–6 (C.D. Cal. June 23, 2020); *Atwood v. Rent-A-Ctr. E., Inc.*, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016); *Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 381 (E.D.N.Y. 2016); *Garza Nunez v. Weeks Marine, Inc.*, 2007 WL 496855, at *6 (E.D. La. Feb. 13, 2007).

[3] Even when an arbitration provision references the FAA but says nothing about which state's arbitration law applies if the agreement is held exempt from the FAA, courts still compel arbitration under state law. *See, e.g., Atwood v. Rent-A-Ctr. E., Inc.*, No. 15-CV-1023-MJR-SCW, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016); *Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 381 (E.D.N.Y. 2016).

*Toll Bros.*, 55 Va. Cir. 18 (2001). Accordingly, a court interpreting the VUAA can look to federal courts' interpretation of the FAA as "persuasive authority." *Id.*; *see also Tucker v. Ford Motor Co.*, 72 Va. Cir. 420 n.5 (2007) ("Virginia Courts have found the federal courts' consideration of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., to be instructive when interpreting the Virginia Uniform Arbitration Act, Va. Code § 8 .01–581.01 et seq."); *Waterfront Marine Const., Inc. v. N. End 49ers Sandbridge Bulkhead Groups A, B & C*, 251 Va. 417, 426, 468 S.E.2d 894, 899 (1996) (relying on federal FAA cases to establish rule under VUAA); *Marks v. Marks*, 36 Va. App. 216, 223, 548 S.E.2d 919, 922 (2001) (same).

>    **C.    The Parties Delegated Nearly All Issues Regarding the Scope of the Arbitration Agreement to the Arbitrator.**

Under the VUAA, "the parties by their contract can agree that [specific issues] be decided by the arbitrator." *Waterfront*, 468 S.E.2d at 898–99. "Thus, [a court] must look to the parties' contract to see if such an agreement exists in the present case." *Id.*; *Kay Jennings Family Ltd. P'ship v. DAMN, LLC*, 71 Va. Cir. 348 (2006) (same); *see also Sabo v. Dennis*, 408 Ill. App. 3d 619, 628, 948 N.E.2d 121, 130 (2011) ("Under Virginia law, the trial court is authorized in the first instance to decide issues of arbitrability, unless the parties have specifically agreed in their contract that the issue of arbitrability is for the arbitrators." ). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Bolton v. McKinney*, 97 Va. Cir. 7 (2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Here, the Independent Contractor Agreement contains a broad delegation provision; the parties agreed that the arbitrator will "decide all issues arising out of or relating to the interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of this Arbitration Provision or any portion of it, except the issue of the availability of class,

collective, consolidated, or representative arbitration of claims, which issue shall be reserved." *2019 Independent Contractor Agreement*, § 22(c). This provision authorizes the arbitrator to decide both (1) whether Plaintiffs' claims fall within the scope of the arbitration provision, and (2) threshold issues regarding the arbitration provision's validity or enforceability. *Id.* Accordingly, the only issue for the Court to decide is the "availability of class . . . arbitration." *Id.*

### D.     The Arbitration Provision Waives Class Proceedings and that Waiver Is Enforceable.

The parties have expressly waived class action: "**THE PARTIES AGREE THAT NO CLASS, COLLECTIVE, CONSOLIDATED, OR REPRESENTATIVE ARBITRATION OF CLAIMS SHALL BE ALLOWED.**" *2019 Independent Contractor Agreement*, § 22(d). The class action waiver is enforceable. "Virginia jurisprudence does not recognize class actions." *Casey v. Merck & Co.*, 283 Va. 411, 418, 722 S.E.2d 842, 846 (2012); *In re Volkswagen "Clean Diesel" Litig.*, 94 Va. Cir. 189 (2016); *Wade v. Danek Med., Inc.*, 182 F.3d 281, 288 n.7 (4th Cir. 1999) ("Indeed, Virginia itself has no class action provision analogous to Federal Rule 23.").

This conclusion of enforceability is in harmony with federal courts' treatment of class action waivers under the FAA. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013); *Ahern*, 55 Va. Cir. 18 (noting federal courts' interpretation of the FAA is "persuasive authority" regarding the VUAA's interpretation). Massachusetts' public policy provides no basis on which to disturb the enforceability of the parties' class action waiver. First, the parties have agreed to apply Virginia law, and "Virginia does not look at the public policy of other states in" deciding whether that agreement is enforceable. *Precision Pipeline, LLC v. Dominion Transmission, Inc.*, No. 3:16-CV-00180, 2017 WL 1100903, at *3 (E.D. Va. Mar. 23, 2017) (citing *Faltings v. Int'l Bus. Machs. Corp.*, 1988 WL 83316, at *3 (4th Cir. Aug. 4, 1988) (unpublished) ("The only intimations that Virginia might not enforce the parties' choice-of-law provision in a contract concern situations in which there was no reasonable basis for the parties' choice or where one of the parties was misled

9

into agreeing to the provision.")).

In the parties' meet and confer on this Motion, Plaintiffs pointed to this court's decision in *Sanchez v. Lasership, Inc.*, No. 1:12CV246 GBL/TRJ, 2012 WL 3730636 (E.D. Va. Aug. 27, 2012) as precluding LaserShip's reliance on Virginia law in this case. But *Sanchez* does nothing to support Plaintiffs' position. There, the court refused to apply the parties' Virginia choice of law provision because the provision—which provided that the agreement "be construed according to the laws of . . . the Commonwealth of Virginia"—was not broad enough to encompass the Massachusetts wage claims. *Id.* at *3. "[T]he ICA's choice of law provision covers only issues of how the contract is construed and does not cover statutory wage claims. Thus, the Governing Law provision does not bar application of the Massachusetts IC Statute to the claims in this case." *Id.* at *7. The court contrasted the narrow choice of law provision with the broader forum selection clause. Because the forum selection clause covered any "claims or disputes arising from or in connection with this agreement," it encompassed the plaintiffs' Massachusetts wage claims as those claims, which "ar[o]se from and [were] connected with the ICA." *Id.* at *6. Here, the choice of law provision in Plaintiffs' Independent Contractor Agreements is even broader than the forum selection clause the *Sanchez* court held was broad enough to encompass Massachusetts Wage Act claims. Both Buckmire and Nardone agreed that "Virginia law shall govern any disputes and claims arising under, out of, or in connection with or relating to this Agreement, any prior agreements between the parties, any current or prior relationship between the parties, any other dealings between the parties, or to any aspect of the relationship between the parties to this Agreement." *2019 Independent Contractor Agreement*, §19.[4]

---

[4] For this reason, the remainder of the *Sanchez* opinion is irrelevant. After *Sanchez* concluded the choice of law provision did not control, it applied Virginia's and Massachusetts' default choice of law rules and determined that Massachusetts law applied. Here, however, because the parties agreed Virginia law would apply, that is the end of the inquiry and the Court does not engage in a

Plaintiffs' counsel also asserted that *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 33 (1st Cir. 2020), foreclosed the relief Defendant seeks in this Motion.[5] But *Waithaka* does not control the Court's analysis here. In *Waithaka*, the court applied Massachusetts' choice of law rules, because the court was sitting in Massachusetts, to determine whether a class action waiver in an arbitration agreement governed by Washington law was enforceable. But this Court sits in Virginia. And "[a] federal court exercising diversity jurisdiction applies the choice of law rules of the forum state." *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 96 (4th Cir. 2019) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Accordingly, the *Waithaka* court's discussion regarding whether Massachusetts public policy prohibited class action waivers has no bearing on the Court's consideration of this motion: the parties here agreed to apply Virginia law and, under Virginia's choice of law rules (which this court must apply under *Klaxon*), "Virginia does not look at the public policy of other states in" deciding whether that agreement is enforceable. *Precision Pipeline*, 2017 WL 1100903, at *3.

Second, even if the Court considers Massachusetts' public policy regarding class action waivers, that policy cannot undo an arbitration agreement under the VUAA. Like under the FAA, arbitration agreements under the VUAA are "valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract." Va. Code § 8.01-581.01; *compare* 9 U.S.C. § 2 (providing that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

---

further choice of law analysis. *Klein v. Verizon Commc'ns, Inc.*, 674 F. App'x 304, 308 (4th Cir. 2017) (holding the district court erred in applying Virginia's default choice of law analysis because the parties' agreement contained a choice of law provision).

[5] *Waithaka* held (1) the statutory authorization to proceed as a class under various Massachusetts employment statutes represents the fundamental public policy of Massachusetts, and therefore (2) the Massachusetts Supreme Judicial Court would invalidate a class arbitration waiver like the one at issue in that case.

contract"). This "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). A state law that invalidates a class waiver and "permit[s] any party in arbitration to demand classwide proceedings" is not a "ground[] as exist[s] at law or in equity for the revocation of any contract." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) (citing *Concepcion*); 9 U.S.C. § 2. However labeled, "an argument that a contract is unenforceable *just because it requires bilateral arbitration* . . . is one that impermissibly disfavors arbitration" and cannot be considered a "generally applicable contract defense." *Epic Sys.*, 138 S. Ct. at 1623; *Concepcion*, 563 U.S. at 352–53 (2011) (Thomas, J., concurring) ("If § 2 means anything, it is that courts cannot refuse to enforce arbitration agreements because of a state public policy against arbitration, even if the policy nominally applies to 'any contract.'").

While *Concepcion* and *Epic Systems* interpreted the FAA, there is no reason to think the Virginia Supreme Court would interpret the VUAA any differently "because the language of both Acts is identical." *Augusta Lumber Co. v. Broad Run Holdings, LLC*, 71 Va. Cir. 326 (2006); *Waterfront*, 468 S.E.2d at 899 (relying on federal FAA cases to establish rule under VUAA); *Marks*, 548 S.E.2d at 922 (same). Indeed, the one substantive difference between the two acts is that the VUAA expressly provides that its terms apply to "arbitration agreements between employers and employees." Va. Code § 8.01-581.01.[6] This provision reflects the Virginia legislature's interest in ensuring the enforceability of arbitration agreements in the context of employment disputes. The fact that Massachusetts public policy might prohibit the class waiver in

---

[6] Here, LaserShip disputes it was Plaintiffs' employer. Plaintiffs twice signed agreements with LaserShip affirming their independent contractor relationships with LaserShip.

the arbitration agreement between Plaintiffs and LaserShip is irrelevant. Virginia has no similar

public policy and Massachusetts' policy cannot render the arbitration agreement unenforceable

because it is not a "ground[] as exist[s] at law or in equity for the revocation of any contract." Va.

Code § 8.01-581.01.

## IV.    CONCLUSION

Accordingly, LaserShip respectfully requests that the Court grant its motion to compel

arbitration under the VUAA.


Dated: January 13, 2021                    Respectfully submitted,

/s/ Kim D. Mann
Kim D. Mann (Virginia Bar No. 25672)
SCOPELITIS, GARVIN, LIGHT, HANSON &
FEARY, P.C.
4601 N. Fairfax Drive, Suite 720
Arlington, VA 22203
Tel:  (202) 551-9025
Fax: (206) 527-2362
kmann@scopelitis.com

Adam C. Smedstad, admitted *pro hac vice*
SCOPELITIS, GARVIN, LIGHT, HANSON &
FEARY, P.C.
3214 W. McGraw Street, Suite 301F
Seattle, WA 98199
Tel:  (206) 288-6192
Fax: (206) 299-9375
asmedstad@scopelitis.com

Andrew J. Butcher, admitted *pro hac vice*
SCOPELITIS, GARVIN, LIGHT, HANSON &
FEARY, P.C.
30 West Monroe Street, Suite 1600
Chicago, IL 60603
Tel:  (312) 255-7200
Fax: (312) 422-1224
abutcher@scopelitis.com

James A. Eckhart, admitted *pro hac vice*
SCOPELITIS, GARVIN, LIGHT, HANSON &
FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
Tel:  (317) 637-1777
Fax: (317) 687-2414
jeckhart@scopelitis.com

Attorneys for Defendant,
LASERSHIP, INC.

4838-7412-1429, v. 12

14