**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **ANDERSON BUCKMIRE and JUSTIN NARDONE, individually and on behalf of all others similarly situated,**<br><br>                    **Plaintiffs,**<br><br>**v.**<br><br>**LASERSHIP, INC.,**<br><br>                    **Defendant.** | Civil Action No. 1:20-cv-01493-RDA-IDD<br><br>Hon. Ronnie D. Alston, Jr. |

**PLAINTIFFS' OPPOSITION TO DEFENDANT LASERSHIP'S
<u>MOTION TO COMPEL ARBITRATION</u>**

Plaintiffs Anderson Buckmire and Justin Nardone have worked as delivery drivers for Defendant, LaserShip, Inc. ("LaserShip") since 2017. Dkt. 1 ("Complaint") ¶¶ 4-5. At all times, they have been Massachusetts residents and have performed the entirety of their work within the borders of the Commonwealth of Massachusetts. Each day, they deliver pharmaceutical and other products from LaserShip's terminal in Woburn, Massachusetts, to pharmacies and residences in the Greater Boston area. Id. ¶ 9. LaserShip concedes that these deliveries constitute interstate commerce. They do this work full-time, for more than forty hours a week. Id. ¶ 10. They have sued LaserShip in this proposed class action for independent contractor misclassification under Massachusetts law, seeking unpaid overtime and reimbursement of the numerous deductions that have been taken from their pay and the expenses that they have been required to bear as a result of their misclassification. Id. ¶¶ 35-39. As LaserShip well knows, Plaintiffs and the class of Massachusetts drivers they seek to represent would be almost certain to prevail under the Massachusetts Independent Contractor statute, which provides that workers

1

who perform work in the usual course of an employer's business are employees, not independent contractors.[1]

Now, in a transparent effort to evade application of Massachusetts law, which will almost certainly result in a finding of employee status for Plaintiffs and other drivers[2], LaserShip seeks to wield the combination of its forum selection clause and choice of law clause in order to compel under the Virginia Uniform Arbitration Act, by seeking a ruling that Virginia law governs the parties' relationship and thus requires arbitration.

However, Virginia law cannot be applied to Massachusetts' workers, and under Massachusetts law, arbitration agreements containing class action waivers (like the agreement at

---

[1]  Under this test, a worker is presumed to be an employee unless the defendant can satisfy ***all three of the following criteria***:
>(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
>(2) the service is performed outside the usual course of the business of the employer; and,
>(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

M.G.L. c. 149, § 148B. The Massachusetts test is *not* a balancing test where the court weighs a variety of considerations.  It is a strict, conjunctive test in which the employer must satisfy all criteria in order to defeat the presumption of employee status.  LaserShip, which provides "delivery of packages", see Motion at 1, will not be able to establish that its delivery drivers are performing work "outside the usual course" of LaserShip's business.

[2]  Countless courts have granted summary judgment to delivery drivers like Plaintiffs who seek the protections of the Massachusetts wage laws.  See, e.g., Martins v. 3PD, Inc., 2013 WL 1320454, at *13 (D. Mass. Mar. 28, 2013) (plaintiff delivery drivers were employees of delivery company under Massachusetts "ABC" test); Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745, at *2 (D. Mass. Dec. 30, 2013) (same); Oliveira v. Advanced Delivery Sys., Inc., 27 Mass.L.Rptr. 402, 2010 WL 4071360 (same) (Mass. Super. Ct. July 16, 2010); Fucci v. Eastern Connection Operating, Inc., No. 08–2659, slip op. (Mass. Super .Ct. Sept. 21, 2009) (same); Amero v. Townsend Oil Co., No. 07-1080-C, slip. op. (Mass. Super. Ct. Dec. 3, 2008) (oil delivery drivers were employees where they were "required to deliver fuel oil to the customers [defendant] designated on the days [defendant] stipulated" and they "had no discretion regarding what price to charge….").

2

issue here) are unenforceable as violative of Massachusetts public policy. See Waithaka v. Amazon, Inc., 966 F.3d 10, 29-35 (1st Cir. 2020). While LaserShip argues that Massachusetts' public policy is irrelevant because Virginia law, not Massachusetts law governs here, LaserShip points to no decision supporting its position, while in fact two other federal courts, *including Judge Lee in this district*, have ruled to the contrary, finding that Massachusetts law, not Virginia law, applies to the wage claims of LaserShip drivers who work in Massachusetts, notwithstanding the choice-of-law provision in those drivers' agreements with LaserShip. See Sanchez v. LaserShip, Inc., 2012 WL 3730636, at *5-7 (E.D.Va. Aug. 27, 2012) (Lee, J.); Reynoso v. LaserShip, Inc., 322 F. Supp. 3d 211 (D. Mass. 2018).[3]

    LaserShip contends that, under Virginia's choice-of-law rules, the Court has no choice but to enforce the Virginia choice-of-law provision in Plaintiffs' agreements with LaserShip. But as discussed infra Sec. II.C, Virginia's choice-of-law rules do not permit enforcement of choice-of-law provisions that would be adverse to the public policy of the state that would otherwise have the greatest interest in the case (here, Massachusetts) and that prevent a party from vindicating their wage rights. Even assuming Virginia could apply here, application of Virginia law would do just that, as it would deprive Plaintiffs the benefit of the Massachusetts Independent Contractor statute's "ABC" test and all other protections under the Massachusetts Wage Act. In fact, until July 2020, *Virginia did not even have a wage statute* at all, leaving workers like Plaintiffs entirely without a mechanism to seek to recover deductions that have been taken from their pay and other expenses they should not have borne. And while Massachusetts law guarantees a right to be paid overtime, Virginia has no overtime statute at all. Application of

---

[3]     The undersigned attorney Harold Lichten served as lead counsel for the plaintiffs in Sanchez and in the Waithaka appeal.

Virginia law here would therefore eliminate Plaintiffs' state law overtime claim and most of the time period for which Plaintiffs could seek the remainder of their damages based on deductions and unreimbursed expenses. In sum, LaserShip effectively seeks to eviscerate Plaintiffs' case by avoiding application of the labor protections enacted by the Massachusetts legislature to protect workers within its borders. This Court must not countenance such an end-run around the traditional police powers of another state.[4]

## ARGUMENT

### I. The Federal Arbitration Act Has No Applicability Here

As LaserShip effectively concedes in moving to compel arbitration pursuant to the Virginia Uniform Arbitration Act, the Federal Arbitration Act ("FAA") does not apply to this case. Section 1 of the FAA specifically exempts from the Act's coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Two federal circuits have held that "last-mile" delivery drivers like the Plaintiffs, who transport goods that have been in the flow of interstate commerce from a local warehouse to their final destination, are exempt from the FAA, even though they do not cross state lines. See Waithaka, 966 F.3d 10, 26 ("The original meaning of the phrase "engaged in ... interstate commerce," revealed by the FELA precedents, and the text, structure, and purpose of the FAA, all point to the same conclusion: Waithaka and other last-mile delivery workers who haul goods on the final legs of interstate journeys are transportation workers "engaged in ... interstate commerce," regardless of whether the workers themselves physically

---

[4] Plaintiffs understand that the February 3, 2021, hearing that was noticed for this motion has been taken off calendar. See January 13, 2021, docket entry ("Per RDA chambers motions set for 2/3/2021 on the pleadings"). In light of the legal complexities inherent in LaserShip's motion and this Opposition, Plaintiffs respectfully submit that oral argument may assist the Court in deciding the motion.

cross state lines."); Rittmann v. Amazon.com, Inc., 971 F.3d 904, 917 (9th Cir. 2020) ("AmFlex workers complete the delivery of goods that Amazon ships across state lines and for which Amazon hires AmFlex workers to complete the delivery. AmFlex workers form a part of the channels of interstate commerce, and are thus engaged in interstate commerce as we understand that term.").[5] It is unsurprising, then, that LaserShip now moves to compel arbitration only under the Virginia Arbitration Act, which contains no such exemption; under Waithaka and Rittman, Plaintiffs are undoubtedly exempt from arbitration under the FAA.

### II. Under Virginia's Choice-of-Law Rules, Massachusetts Law Governs the Parties' Relationship

LaserShip now asks this Court to allow it to evade Massachusetts' fundamental public policy against class waivers, as well as Massachusetts' more favorable ABC test and wage laws, by enforcing the Virginia choice-of-law provision in the parties' agreement and compelling arbitration under the Virginia Uniform Arbitration Act. Because LaserShip's forum selection clause prevented them from bringing their case in Massachusetts (where, as discussed infra, the arbitration provision would not be enforced), Plaintiffs had no choice but to file this case in this Court. Indeed, Plaintiffs' counsel originally filed the Sanchez case in Massachusetts federal court, and the case was dismissed by the court so it could be re-filed in this court pursuant to LaserShip's forum selection clause. See Sanchez v. LaserShip, Inc., Case No. 11-cv-10990 (D. Mass.) (Dkt. 31) ("It is prudent and most appropriate to dismiss plaintiffs' claims without prejudice to their being reinstituted in a federal or state court in Virginia as required by the forum selection clause at issue in the Motion."). Because Plaintiffs have now been forced to invoke this Court's diversity jurisdiction pursuant to Sanchez, LaserShip contends that the Court must apply

---

[5] Mr. Lichten also argued the Rittman appeal before the Ninth Circuit.

Virginia's choice-of-law principles to determine whether to enforce the choice-of-law provision in the agreement. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941). As explained below, this Court should readily find that, even under Virginia's choice-of-law principles, Massachusetts law governs the Plaintiffs' claims and the enforceability of the arbitration provision.

**A. Two Federal Courts (Including One in This District) Have Already Found that, under Virginia's Choice-of-Law Rules, Massachusetts Law Governs the Claims of Massachusetts LaserShip Drivers Who are Required to Sue LaserShip in Virginia**

This Court is not writing on a blank slate in deciding LaserShip's motion to compel arbitration. Two other federal courts, one in this district and one in Massachusetts, have already ruled that Massachusetts law applies to the claims of Massachusetts LaserShip drivers who have sued LaserShip for independent contractor misclassification under the Massachusetts Independent Contractor statute but, because of LaserShip's forum selection clause, are forced to bring their claims in this judicial district.

As noted above, the Sanchez case was originally filed in Massachusetts, where the work was performed. LaserShip moved to dismiss the case in light of its forum selection clause, which provides that disputes between the parties will be brought in Virginia, and the Massachusetts federal court granted LaserShip's motion. Plaintiffs were forced to re-file in this Court. Once the case was before Judge Lee, LaserShip argued that Virginia law, not Massachusetts law, should apply to the Plaintiffs' claims.[6] Judge Lee soundly rejected LaserShip's argument, finding that Massachusetts law, not Virginia law, applied, because "the

---

[6] The Massachusetts federal court did not reach the choice-of-law issue but mused that this Court would be able to apply Massachusetts law. See Exhibit A (transcript of argument in Sanchez, Case No. 11-cv-10990 (D. Mass.)).

contracts were made in Massachusetts and [] Massachusetts has a substantial interest in the subject matter of the case." Sanchez, 2012 WL 3730636, at *5.

LaserShip contends that Sanchez has no applicability here because the choice-of-law clause at issue there applied only to "claims or disputes arising from or in connection with [the] agreement," while the version of the agreement signed by the Plaintiffs contains a broader choice-of-law provision that covers not only contractual interpretation but also "any aspect of the relationship between the parties to this Agreement." Mot. at 10. But a fair reading of Sanchez makes clear that Judge Lee's rationale was *not* premised solely on the narrower choice-of-law provision at issue there. To the contrary, Judge Lee conducted a careful choice-of-law analysis and determined that, "[b]oth Virginia or Massachusetts choice-of-law rules require the application of Massachusetts law in this case." Id. at *8. He found that "Massachusetts law applies under Virginia choice-of-law rules because Plaintiffs' claims arise from their contractual relationship with Lasership and the contracts at issue were made in Massachusetts and are being performed in Massachusetts. Id. (citing Erie Ins. Exch. v. Shapiro, 248 Va. 638 (1994)).[7] Moreover, Judge Lee determined that Massachusetts also had "a substantial policy interest in how Massachusetts-based workers are classified and compensated." Id. (quoting and citing Somers v. Converged Access, Inc., 911 N.E. 2d 739, 749 (Mass. 2009) (the "legislative purpose behind the [Massachusetts] independent contractor statute is to protect employees from being deprived of the benefits enjoyed by employees through their misclassification as independent contractors.")).

---

[7] Under Massachusetts choice-of-law rules, Massachusetts law also applied, because Massachusetts had more significant ties to the dispute at issue, which was premised entirely on work that was performed in Massachusetts. Id.

7

More recently, in Reynoso v. LaserShip, Inc., 322 F. Supp. 3d 211 (2018), a federal judge in Massachusetts was faced with a motion to transfer a proposed class action against LaserShip under the Massachusetts Wage Act to this Court. While the plaintiffs in that case urged the court to keep the case in Massachusetts so that Massachusetts law would apply, the court determined that Massachusetts wage law would have to be applied by the court in this district, pursuant to Virginia's choice-of-law rules. The court found that "[t]he plaintiff has failed to demonstrate that the [Eastern District of Virginia] would apply choice-of-law rules contrary to Massachusetts law. Virginia courts will set aside choice-of-law provisions where application of the law of the chosen state would be adverse to a fundamental policy of a state which has a materially greater interest than the chosen state… [the plaintiff] has not met his burden of demonstrating that Virginia's choice-of-law rules would select a law other than Massachusetts." Id. at 216-17. (citing Zaklit v. Global Linguist Sols., LLC, 2014 WL 3109804, at *21 (E.D. Va. July 8, 2014) (itself citing Malpractice Research, Inc. v. Norman, 24 Va. Cir. 118, 119 (Va. Cir. Ct. 1991)) ("[A] Virgina Court can decline to honor a choice-of-law provision if application of the chosen law will usurp a statutory claim that is a fundamental policy of a state which has a materially greater interest in the litigation.").[8]

There is no reason for this Court to depart from the rationale of its sister courts; it too can and should readily find that, under Virginia's choice-of-law rules, Massachusetts law governs the parties' claims here.

### B. The Class Action Waiver Violates Massachusetts law

Having found that Massachusetts law governs, the Court must find that LaserShip's arbitration provision violates Massachusetts law because it contains a class action waiver

---

[8] After the case was transferred to this Court, the parties agreed to proceed in arbitration. See Reynoso v. LaserShip, Inc., Case No. 18-cv-782.

prohibiting drivers from bringing "class, collective, consolidated, or representative" proceedings. Dkt. 20-2 at 54 ¶ 22.  The First Circuit in Waithaka undertook a careful review of Massachusetts law regarding class action waivers in employment agreements like this one, and it unequivocally determined that they are in violation of Massachusetts law.  The Waithaka court noted that the Massachusetts Supreme Judicial Court ("SJC") has held that a class action waiver in the consumer context violates the fundamental public policy of Massachusetts law is unenforceable. See Waithaka, 966 F.3d at 29-30 (citing Feeney v. Dell Inc. ("Feeney I"), 908 N.E.2d 753, 762-65 (Mass. 2009) (holding a class action waiver unlawful and refusing to enforce it).  The First Circuit then noted that the Massachusetts Wage Act and Independent Contractor statute expressly "create[] a private right of action by which a person may institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages," and other relevant relief.  Waithaka, 966 F.3d at 29 (citing ch. 149, § 150 & ch. 151, § 20 (emphasis added).  The statutes also contain an express prohibition against waiver of the right to bring class claims under the Massachusetts Wage Act and Independent Contractor state.  Id. at 32-33 (citing Mass. Gen. Laws ch. 149 § 148) ("No person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty.").  The First Circuit found that such "[a]nti[-]waiver provisions are characteristic of laws that protect fundamental public policy."  Id. (quoting Melia v. Zenhire, Inc., 967 N.E.2d 580, 588 (Mass. 2012)).

Thus, the Waithaka court concluded that Massachusetts' "fundamental public policy protects the right to bring class actions in the employment context" just like it does in the consumer context, and it held that the Massachusetts SJC would invalidate a class waiver in an employment contract.  See Waithaka, 966 F.3d at 33 ("[W]e are confident that the

[Massachusetts Supreme Judicial Court] would conclude that … the statutory rights to proceed as a class articulated in the Massachusetts Wage Act, Independent Contractor Misclassification Law, and Minimum Wage Law -- as well as the statutory provision that precludes contractual waiver of these rights -- represent the fundamental public policy of Massachusetts, and that the SJC would therefore invalidate a class waiver in an employment contract, like that of Waithaka, not covered by the FAA.").[9]  Under Waithaka, there can be no question that LaserShip's arbitration provision is unenforceable under Massachusetts law.

### C. The Agreement Cannot Be Enforced Under Virginia's Choice-of-Law Rules

In urging the Court to find that Virginia's choice-of-law rules would permit enforcement of its arbitration provision, LaserShip simply ignores the rationale of the Sanchez and Reynoso decisions.  Yet even if this Court were to conduct an independent analysis of the issue, it should conclude that Massachusetts law, not Virginia law, governs here.

Virginia courts have not expressly adopted the Restatement (Second) of Conflict of Laws § 187(2) for its choice-of-law analysis like Massachusetts has, see supra note 5, but Virginia courts do consider whether application of the chosen law is equitable under the circumstances. "Virginia courts generally enforce choice-of-law clauses, 'unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power.'"  JAAAT Tech. Servs., LLC v. Tetra Tech Tesoro, Inc., 2017 WL

---

[9]     The First Circuit went on to hold that the Washington choice-of-law provision in Amazon's agreement was in violation of Massachusetts' fundamental public policy against class waivers, because Washington state presumably would permit class waivers while Massachusetts law does not.  Thus, under Massachusetts' choice-of-law rules, which are derived from the Restatement (Second) of Conflict of Laws § 187(2), the First Circuit found that as the state with the greater interest in light of its strong public policy against class waivers, Massachusetts "would oust the contractual choice of Washington law as contrary to the Commonwealth's fundamental public policy and would govern the enforceability of the dispute resolution section of the Agreement." Waithaka, 966 F.3d at 34-35.

4003026, at *8 (E.D. Va. Sept. 11, 2017) (quoting Paul Bus. Sys., Inc. v. Canon U.S.A., Inc., 397 S.E.2d 804, 807 (Va. 1990)); see also Zaklit, 2014 WL 3109804, at *21; In re: Land America Financial Group, Inc., 2011 WL 5149100, at *3 (Bankr. E.D. Va., Oct. 23, 2011) ("Virginia courts will generally uphold choice-of-law provisions in contracts so long as there is a reasonable basis for the choice and the law chosen is not contrary to the public policy of the state with greater interest and whose law would otherwise govern.") (citing Union Cent. Life Ins. Co. v. Pollard, 94 Va. 146, 151 (1896) and Restatement of Conflicts of Law 2d, Contracts, § 187(2)); Western Capital Partners v. Brookhollow LLC, 2007 WL 1202851, * 9 (E.D. Va. April 19, 2007) (applying the chosen law should not "deprive the plaintiff of a remedy" or "contravene public policy"); Shashi, Inc. v. Ramada Worldwide, Inc., 2005 WL 1923567, at *1 (W.D. Va. Aug. 11, 2005) ("Under Virginia law, a choice-of-law clause is enforceable so long as it does not contravene public policy.") (citing Tate v. Hain, 181 Va. 402, 25 S.E.2d 321, 324 (1943)); Malpractice, 24 Va. Cir. at 119 (applying §187(2) of the Restatement on Conflicts of Law)).

Here, there is no question that application of Virginia law would be "unfair [and] unreasonable," JAAAT Tech. Servs., 2017 WL 4003026, at *8, and that it would be "contrary to the public policy of the state with greater interest and whose law would otherwise govern." In re: Land America, 2011 WL 5149100, at *3. If LaserShip is successful in enforcing the Virginia choice-of-law provision in its agreement, Plaintiffs will be effectively prevented from vindicating their Massachusetts statutory wage rights, which are far more favorable to workers than the comparable Virginia law.

**First**, Massachusetts' straightforward "ABC" test *presumes* the worker to be an employee unless the employer can satisfy all three prongs. And as noted above, LaserShip would be unlikely to establish that its drivers are not employees under the "ABC" test. See supra

11

note 1. Under Virginia law, on the other hand, Plaintiffs would be subject to the I.R.S.'s complicated 20-factor independent contractor test based on the right-to-control, which is ripe for employer manipulation. See VA Code § 40.1-28.7:7 (adopting I.R.S.'s misclassification test).

**Second**, as noted supra page 3, Virginia does not have an overtime statute at all, nor did it even have a wage collection statute that allowed workers to sue their employer until July 2020, when it enacted the Virginia Wage Payment Act, VA Code § 40.1-29, effective July 1, 2020. If their suit were governed by Virginia law, Plaintiffs would be wholly without a remedy for their overtime claim and would be without a remedy for the remaining claims for most of the time period covered by their suit. It is also not clear that Virginia's new statute would even recognize Plaintiffs' claims based on the improper deductions and expenses that they have been forced to bear as part of their work for LaserShip.[10] See Complaint, Dkt. 1, ¶ 36.

**Finally**, perhaps most importantly, as noted above, assuming that Virginia law would permit the class action waiver to stand, see Mot. at 9, such a waiver would indubitably be inconsistent with the fundamental public policy of Massachusetts, the state where all of the Plaintiffs' work was performed and the state that plainly has the greater interest in protections of Massachusetts workers. At bottom, application of Virginia law here would effectively nullify the rights that Plaintiffs – Massachusetts residents who have worked within the borders of Massachusetts – enjoy under Massachusetts law.

### D. LaserShip Cannot Use the Combination of Its Forum Selection Clause and Its Choice-of-Law Provision to Evade Massachusetts Law

---

[10] Plaintiffs would also only be entitled to double damages for unpaid wages, see VA Code § 40.1-29(J), rather the treble damages to which they would be entitled under Massachusetts law. M.G.L. ch. 149 § 150.

The Supreme Court has held that, "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies... we would have little hesitation in condemning the agreement as against public policy." See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 n.19 (1985). That is exactly what LaserShip seeks to do here: it seeks to deprive out-of-state workers of the wage protections of their home states by wielding its forum selection clause to force out-of-state workers to file in this court, where they will be subject to Virginia's choice-of-law rules and a Virginia choice-of-law provision in the agreement. And under Fourth Circuit law, "arbitration of [a] claim will not be compelled if the prospective litigant cannot effectively vindicate his statutory rights in the arbitral forum." In re Cotton Yarn Antitrust Litig., 505 F.3d 274, 282 (4th Cir. 2007). While these cases were decided under the FAA, as LaserShip itself noted, "in all material respects the Virginia Uniform Arbitration Act is similar to the Federal Arbitration Act." Mot. at 7 (quoting Ahern v. Toll Bros., 55 Va. Cir. 18 (2001). It is difficult to fathom that Virginia's public policy would permit enforcement of an arbitration provision that effectively waives a party's substantive rights, when such a provision would plainly violate federal law.

This Court should join the numerous courts that have recognized Massachusetts' strong public policy in favor of protecting workers' rights and have held that Massachusetts drivers are subject to the wage laws of Massachusetts despite a choice of law provision designating some other state law to apply. For example, in Tavares v. S-L Distribution, Case No. 13-1313 (M.D.Pa. Jan. 14, 2014) (Dkt. 70) (Exhibit B), the court found that the differences in Massachusetts' ABC test and Pennsylvania's right-to-control misclassification test (which is similar to the one adopted by Virginia) meant that "[t]he practical effect of choosing

13

Pennsylvania law over Massachusetts law would be to substantially disadvantage any party seeking to establish the existence of an employee/employer relationship. Accordingly, we find that the application of Pennsylvania law to Plaintiffs' statutory claims would be contrary to a fundamental policy of Massachusetts." Exhibit B at 17. See also Berberian v. G-Form, LLC, 2014 WL 12700578, at *5 (D. Mass. Aug. 29, 2014) (holding that Massachusetts Wage Act applied to work performed in Massachusetts despite Rhode Island "choice of law" provision in employment contract because "a contractual provision that, in operation, would deprive an eligible employee of substantive rights guaranteed by the Wage Act violates public policy and is unenforceable.") (citing Melia v. Zenhire, Inc., 967 N.E.2d 580, 590 (Mass. 2012)); see also Melia, 967 N.E.2d at 590 ("A forum selection clause that, in operation, would deprive an employee of substantive rights guaranteed by the [Massachusetts] Wage Act violates public policy and is unenforceable.").

Courts nationwide have similarly declined to enforce choice-of-law or forum selection clauses that would allow an employer to evade its obligations under the labor laws of the state where the work was performed. See, e.g., Focus Fin. Partners, LLC v. Holsopple, 241 A.3d 784, 821–22 (Del. Ch. 2020) ("California has a fundamental interest in protecting its employees against choice-of-forum and choice-of-law provisions that compromise the substantive protections of California's labor laws….California's specific and fundamental interest in that substantive area of law is materially greater than Delaware's generalized interest in freedom of contract."); Pinela v. Neiman Marcus Grp., Inc., 238 Cal. App. 4th 227, 257 (2015) ("[T]he parties' choice of Texas law will not be enforced for the obvious reason that it would be contrary to fundamental policy in California to do so. The preemptive effect of the FAA may not be used, in effect, as a lever to nationalize the wage-and-hour policies of one state in derogation of the

14

conflicting policies of other states."); Galen v. Redfin Corp., 2015 WL 7734137, at *10 (N.D. Cal. Dec. 1, 2015) ("The Court finds that applying Washington law would have the effect of depriving Plaintiffs of their rights; therefore, the choice of law provision must be severed."); Asignacion v. Schiffahrts, 2011 WL 2118740, at *7 (E.D. La. May 25, 2011) ("Thus, the Court concludes that Plaintiff's employment contract violates the public policy of the United States because the choice of forum and choice of law clauses operate in tandem as a prospective waiver of Plaintiff's right to assert a Jones Act claim."); see also Hayes v. Delbert Servs. Corp., 811 F.3d 666, 675 (4th Cir. 2016) ("A party may not underhandedly convert a choice of law clause into a choice of no law clause—it may not flatly and categorically renounce the authority of the federal statutes to which it is and must remain subject.").

Likewise, numerous courts have held that state wage laws do not apply to work perform outside the state's borders. See Ortiz v. Goya Foods, Inc., 2020 WL 1650577 (D.N.J. Apr. 3, 2020) (Pennsylvania worker could not invoke New Jersey choice of law provision to sue under New Jersey wage laws); Lupian v. Joseph Cory Holdings, LLC, 240 F.Supp.2d 309, 313-14 (D.N.J. 2017) aff'd on other grounds by 905 F.3d 127 (3d Cir. 2018) (dismissing New Jersey wage claims brought by Illinois workers based on the New Jersey choice of law provision); Cunningham v. Feinberg, 441 Md. 310, 342-49 (2015) (finding Maryland wage law controlled wage claim despite employment agreement specifying Virginia law controlled). If this Court were to find that Virginia law applied under the choice-of-law provision but that Virginia law could not apply outside the borders of Virginia, then Plaintiffs would be left without any remedy at all.

In sum, as Judge Lee and the Massachusetts federal court have already determined, Virginia choice-of-law principles compel application of Massachusetts law to Plaintiffs' wage

15

claims and to the enforceability of LaserShip's arbitration agreement.  Massachusetts has the greater interest in the wage laws at issue here, its wage laws are significantly more protective of workers than Virginia's, and its law does not allow for the enforcement of arbitration agreements like LaserShip's, which contain class waiver provisions that are not severable from the rest of the arbitration provision.  Waithaka, 966 F.3d at 33.  Because LaserShip's arbitration provision is plainly unenforceable under Massachusetts law, LaserShip's motion to compel arbitration must be denied.

### III. The Court, Not the Arbitrator, Must Decide the Validity of the Arbitration Agreement

Presumably in an effort to persuade the Court not to conclude that its arbitration provision is unenforceable, LaserShip contends that, pursuant to the broad delegation clause in the arbitration provision, the only issue for this Court to decide is "the issue of the availability of class, collective, consolidated, or representative arbitration of claims."  Mot. at 8-9.  LaserShip is wrong.  As discussed below, this Court must decide both whether the arbitration agreement is enforceable and which state law should apply to Plaintiffs' claims.

#### A. Plaintiffs Are Challenging the Entire Arbitration Agreement, Which Includes the Delegation Clause

Under Rent-A-Center W., Inc., v. Jackson, 561 U.S. 63, 68-69 (2010), the court must ordinarily enforce a delegation clause that "clearly and unmistakably delegates the threshold question of arbitrability to the arbitrator."  Id. at 67.  When the plaintiff challenges the delegation provision, however, the *court,* not the arbitrator, must consider the challenge before ordering compliance with the delegation clause.  Id. at 71; see also New Prime Inc. v. Oliveira, 139 S.Ct. 532, 538 (2019) (noting that a court may only enforce a delegation clause if the arbitration agreement itself is enforceable).

16

The Fourth Circuit has held that where plaintiffs argue that the entire arbitration provision is void (as Plaintiffs do here, see supra Sec. II), that challenge to the arbitration provision "necessarily include[es] the delegation provision", and so the court – not the arbitrator – must determine whether to enforce the delegation clause. Minnieland Private Day School, Inc., v. Applied Underwriters Captive Risk Assurance Co., Inc., 867 F.3d 449, 455-56 (4th Cir. 2017); see also Gibbs v. Haynes Investments, LLC, 967 F.3d 332, 338-339 (4th Cir. 2020) (finding that a plaintiffs' argument in opposition to a motion to compel arbitration that "the delegation clauses are unenforceable for the same reason as the underlying arbitration agreement" was a sufficient challenge to the delegation clause to render the issue one for the court, not the arbitrator).[11] [12]

Plaintiffs here are challenging LaserShip's entire arbitration provision, which includes a delegation provision, as invalid and unenforceable. Just as in Minnieland, this wholesale challenge to the arbitration provision "necessarily includes" a challenge to the delegation clause. To avoid any doubt on this issue, Plaintiffs hereby specifically challenge LaserShip's delegation clause, because it is part of the arbitration provision that, for the reasons discussed supra, is

---

[11] See also MacDonald v. CashCall, Inc, 883 F.3d 220, 226–27 (3d Cir. 2018) ("In specifically challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions."); Gingras v. Think Finance, Inc., 922 F.3d 112, 126 (2d Cir. 2019) (recognizing the presence of a delegation clause but concluding that the plaintiff's "specific attack on the delegation provision is sufficient to make the [broader] issue of arbitrability one for a federal court").

[12] Plaintiffs are unaware of any similar case law under the VUAA discussing the enforceability of a delegation provision. This Court should therefore look to the federal line of cases regarding delegation clauses in its decision here. Indeed, as LaserShip itself conceded, except for transportation worker exemption, which is not at issue here, ""[i]n all material respects, the Virginia Uniform Arbitration Act is similar to the Federal Arbitration Act." Ahern v. Toll Bros., 55 Va. Cir. 18 (2001). Accordingly, a court interpreting the VUAA can look to federal courts' interpretation of the FAA as "persuasive authority." Id.; see also Waterfront Marine Constr., Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B & C, 251 Va. 417, 426-27, 468 S.E.2d 894 (1996) (looking to federal authority interpreting FAA in construing VUAA).

17

invalid. Under Rent-a-Center and Minnieland, this Court cannot delegate the question of the enforceability of the arbitration provision to the arbitrator, but rather it must make that determination on its own. And for the reasons described above, the Court must determine that the arbitration provision – including its delegation clause – cannot be enforced.

### B. The Court Should Decide the Choice-of-Law Issue

It would also be improper for the Court to delegate the choice-of-law question to the arbitrator. Arbitration is an issue of contract, and where an arbitration clause directs the arbitrator to apply the law of a chosen state, the arbitrator's refusal to do so constitutes grounds for vacating the award. See BEM I, L.L.C. v. Anthropologie, Inc., 301 F.3d 548, 554 (7th Cir. 2002) (noting that an arbitral award "might be challenged for disregarding the law [when], although the arbitration clause directs the arbitrators to apply the law of a specified state, they decide they don't like that state's law, they like another state's law better and so they will apply that state's law…. arbitrators are authorized only to interpret contracts and not to use their own ideas of justice to decide the parties' dispute") (citing 9 U.S.C. § 10(a)(4)). Here, because there is a choice-of-law analysis that must be performed in light of the significant differences between the relevant Massachusetts and Virginia laws, the Court must decide the choice-of-law issue itself. For the reasons discussed above, it should find that Massachusetts law applies and that the arbitration agreement cannot be enforced.

### CONCLUSION

For the foregoing reasons, LaserShip's Motion to Compel Arbitration should be denied.

Dated: January 27, 2021                     Respectfully submitted,

ANDERSON BUCKMIRE and JUSTIN NARDONE, on behalf of themselves and all others similarly situated,

By their attorneys,

*/s/ Mark Hanna*
Mark Hanna (Virginia Bar No. 45442)
Murphy Anderson PLLC
1401 K Street NW, Suite 300
Washington, DC 20005
Tel.: 202-223-2620
Fax: 202-296-9600
mhanna@murphypllc.com

Harold Lichten, *pro hac vice*
Michelle Cassorla, *pro hac vice*
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
617-994-5800
hlichten@llrlaw.com
mcassorla@llrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January, 2021, this document was filed via ECF, which constitutes service on all counsel of record.

*/s/ Mark Hanna*
Mark Hanna, Esq.