IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANDERSON BUCKMIRE and JUSTIN )
NARDONE, individually and on behalf of all )
others similarly situated, )
)
                                  *Plaintiffs*, )   Case No. 1:20-cv-01493 (PTG/IDD)
    v. )   Hon. Patricia Tolliver Giles
)
LASERSHIP, INC., )
)
                                  *Defendant.* )

## **MEMORANDUM OPINION & ORDER**

This matter comes before the Court on Defendant LaserShip Inc.'s ("LaserShip" or "Defendant") Motion to Compel Arbitration (Dkt. 20).

Plaintiffs Anderson Buckmire and Justin Nardone (collectively, "Plaintiffs") have worked as delivery drivers for Defendant since approximately 2017. Dkt. 1 ("Compl.") ¶¶ 4–5. On December 4, 2020, Plaintiffs filed a Complaint in the United States District Court for the Eastern District of Virginia, seeking class certification and alleging Defendant (1) violated Massachusetts law concerning the classification of independent contractors and wage payment, Mass. Gen. Laws ch. 149, §§ 148, 148B; (2) violated Massachusetts law concerning overtime pay, Mass. Gen. Laws ch. 151, § 1A; and (3) was unjustly enriched. *Id.* ¶¶ 27–39. Defendant filed the present Motion to Compel Arbitration on January 13, 2021, seeking to compel Plaintiffs to individual, bilateral arbitration pursuant to the arbitration provision within the written independent contractor agreements Plaintiffs signed in 2019. Dkt. 20 at 1.

The issue before the Court is whether to grant Defendant's Motion to Compel Arbitration

under the Virginia Uniform Arbitration Act ("VUAA").[1] For the reasons that follow, the Court grants Defendant's Motion to Compel because the parties entered into a valid arbitration agreement under the VUAA with an enforceable class action waiver under Virginia conflict-of-law rules. While the arbitrability of Plaintiffs' choice-of-law dispute—that is, their arguments that Massachusetts substantive law applies instead of Virginia substantive law to their wage and overtime claims—is an issue properly submitted to the arbitrator, such a dispute does not constitute grounds for revocation or preclude enforcement of the arbitration provision here.

## I. BACKGROUND

Plaintiffs have worked as delivery drivers for Defendant since approximately 2017. Compl. ¶¶ 4–5. Defendant is headquartered in Vienna, Virginia and provides package delivery services in the Midwest and East Coast of the United States, including in Massachusetts, which is serviced by a facility in Woburn, Massachusetts. *Id.* ¶ 6; Dkt. 20-1 at 6. Plaintiffs allege that they are Massachusetts citizens and report to Defendant's terminal in Woburn, Massachusetts on workdays. Compl. ¶¶ 4–6, 9; Dkt. 20-1 at 7. Defendant alleges that drivers based out of its Woburn terminal deliver packages across Massachusetts and New Hampshire. Dkt. 20-1 at 7.

Defendant alleges that it contracts with independent contractors to perform package deliveries. *Id.* at 6. Buckmire signed an Independent Contractor Agreement on November 20, 2018 and signed an updated version on May 16, 2019. *See* Dkt. 20-2 at 4–24 (Ex. A to Decl. of Didier Milongo ("2018 Buckmire Independent Contractor Agreement")); *id.* at 37–60 (Ex. B to Decl. of Didier Milongo ("2019 Buckmire Independent Contractor Agreement")). Nardone signed

---

[1] Both parties concede that the Federal Arbitration Act ("FAA") is not applicable as this case would fall under the "transportation worker" exemption, which excludes "contracts of employment of [transportation workers] engaged in foreign or interstate commerce" from the provisions of the FAA. 9 U.S.C. § 1; *see Cir. City Stores v. Adams*, 532 U.S. 105, 119 (2001); Dkt. 20-1 at 11; Dkt. 22 at 4.

2

an Independent Contractor Agreement on August 13, 2018 and signed an updated version on May 17, 2019. *See id.* at 73–93 (Ex. C to Decl. of Didier Milongo ("2018 Nardone Independent Contractor Agreement")); *id.* at 106–29 (Ex. D to Decl. of Didier Milongo ("2019 Nardone Independent Contractor Agreement")). The 2019 Independent Contractor Agreements signed by Buckmire and Nardone (together, "the ICA") are identical.

Paragraph 19 of the ICA provides that Virginia law governed "any disputes and claims arising under, out of, or in connection with or relating to" the ICA ("choice-of-law provision"):

> 19. <u>Governing Law.</u> This Agreement shall be governed by the laws of the Commonwealth of Virginia, both as to interpretation and performance, without regard to the choice of law rules of such Commonwealth or any other jurisdiction. Virginia law shall govern any disputes and claims arising under, out of, or in connection with or relating to this Agreement, any prior agreements between the parties, any current or prior relationship between the parties, any other dealings between the parties, or to any aspect of the relationship between the parties to this Agreement. Contractor hereby expressly waives, to the fullest extent legally possible, all rights and protections of any state law other those contained in the laws of the state of Virginia.

*Id.* at 53–54, 122–23. The ICA also provides that contractors waived their right to participate in any class or collective action:

> 21. <u>Waiver.</u> CONTRACTOR AND CONTRACTOR'S WORKERS WAIVE ANY RIGHT TO INITIATE, JOIN (I.E., OPT IN TO), REMAIN IN (I.E., NOT OPT OUT OF), OR OTHERWISE PARTICIPATE IN ANY CLASS ACTION, COLLECTIVE ACTION, CONSOLIDATED ACTION, OR REPRESENTATIVE ACTION BROUGHT AGAINST CARRIER, INCLUDING BUT NOT LIMITED TO SUCH ACTIONS BROUGHT UNDER STATE OR FEDERAL LAW AND THOSE ARISING UNDER THE FAIR LABOR STANDARDS ACT.

*Id.* at 54, 123.

Paragraph 22 of the ICA notifies the contractor of a provision that required all parties to submit to arbitration for the majority of claims ("the arbitration provision"):

> 22. <u>Dispute Resolution.</u> **Section 22 of this Agreement requires each party to arbitrate any claims it may have against the other. That provision prohibits the parties from bringing class, collective, consolidated, or representative**

3

> **actions against each other, and waives the parties' right to a jury trial (the "Arbitration Provision"). The Arbitration Provision is optional and not a condition of this Independent Contactor Agreement. Contractor may opt out of the agreement to arbitrate if it so chooses.**
>
> > a. <u>Disputes Covered by this Arbitration Provision.</u> Except as provided in Section 22(b), any dispute (including any request for preliminary or other injunctive relief) between the Parties existing at the time this Arbitration Provision is signed or arising out of or relating to any acts, omissions, conditions, or events during the term of this Arbitration Provision, including but not limited to those arising out of or relating to any Transportation Agreement or other services agreement between the Parties or to any claim of breach of contract, tort, fraud, or other violation or cause of action under the statutes, regulations, common law, or other requirements of any applicable government authorities, whether local, state, Federal, or foreign, including but not limited to the Fair Labor Standards Act, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Employee Retirement Income Security Act, and other Federal labor, employment, or transportation law, and State labor, employment, or transportation law (together, "Claims"), shall be submitted to final and binding arbitration to be administered by the American Arbitration Association ("AAA" or the "Administrator") in accordance with (a) the Commercial Arbitration Rules (and related arbitration rules governing requests for preliminary or other injunctive relief) of the AAA, copies of which are available online at www.adr.org or from LaserShip upon request, or of such other arbitration organization as the Parties agree on in writing, (b) the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*), with respect to which the Parties agree that this Arbitration Provision is not exempt, or if the Federal Arbitration Act is held not to control the arbitration, the arbitration laws of the State of Virginia, and (c) the procedures set forth herein. If for any reason the AAA is unable to serve as the arbitration administer, JAMS shall serve as the administrator (in the event JAMS is also unable to serve as the arbitration administer, the Parties shall confer in good faith to mutually select an arbitration administer). Nothing contained in this Arbitration Provision shall be construed to prevent or excuse Contractor from utilizing any procedure for resolution of complaints established in any other agreement between the Parties (if any), and this Arbitration Provision is not intended to be a substitute for the utilization of such procedures.

*Id.* at 54–55, 123–24. The arbitration provision delegates nearly all issues regarding "the interpretation or application . . . including the enforceability, revocability or validity" of the arbitration provision to the arbitrator, except for "the issue of the availability of class, collective, consolidated, or representative arbitration of claims" ("delegation sub-provision"):

> c. <u>Issues Delegated to an Arbitrator.</u> An arbitrator shall decide all issues arising out of or relating to the interpretation or application of this Arbitration Provision,

4

> including the enforceability, revocability or validity of this Arbitration Provision or any portion of it, except the issue of the availability of class, collective, consolidated, or representative arbitration of claims, which issue shall be reserved.

*Id.* at 55–56, 124–25. The arbitration provision contains a sub-provision ("class action waiver") that specifically waived "class, collective, consolidated, and representative arbitration" and provides that if a court (or arbitrator) found the class waiver unenforceable, the entire arbitration provision would be rendered "null and void":

> **d. This Arbitration Provision Waives Class, Collective, Consolidated, And Representative Actions.** THE PARTIES AGREE THAT NO CLASS, COLLECTIVE, CONSOLIDATED, OR REPRESENTATIVE ARBITRATION OF CLAIMS SHALL BE ALLOWED AND THAT THE ARBITRATOR IS NOT EMPOWERED TO CERTIFY, CONDUCT, OR AWARD RELIEF IN ANY SUCH ARBITRATION. IF A COURT OR ARBITRATOR NEVERTHELESS ALLOWS OR REQUIRES A CLASS, COLLECTIVE, CONSOLIDATED, OR REPRESENTATIVE ARBITRATION, THE PARTIES AGREE THAT SUCH A DETERMINATION IS IMMEDIATELY APPEALABLE TO THE STATE OR FEDERAL COURTS SERVING THE CITY OF FAIRFAX, IN THE STATE OF VIRGINIA, AS CONTRARY TO THE INTENT OF THE PARTIES IN ENTERING INTO THIS ARBITRATION PROVISION AND THAT ALL ARBITRAL PROCEEDINGS, INCLUDING DISCOVERY, SHALL BE STAYED PENDING APPEAL. IN THE EVENT THE DETERMINATION IS NOT REVERSED ON APPEAL, THE PARTIES AGREE THAT THIS ARBITRATION PROVISION IN ITS ENTIRETY, AND ANY PRIOR OR SUBSEQUENT ARBITRATION AWARD UNDER IT, SHALL BE NULL AND VOID, AND ANY CLAIMS BETWEEN THE PARTIES SHALL BE RESOLVED BY COURT ACTION, NOT ARBITRATION, IN THE FOREGOING STATE OR FEDERAL COURTS. IF AT ANY POINT THIS PROVISION IS DETERMINED TO BE UNENFORCEABLE, THE PARTIES AGREE THAT THIS PROVISION SHALL NOT BE SEVERABLE AND THAT THE ENTIRETY OF SECTION 22 SHALL BE NULL AND VOID, UNLESS IT IS DETERMINED THAT THE ARBITRATION WILL NEVERTHELESS PROCEED ON AN INDIVIDUAL BASIS ONLY.

*Id.* at 56, 125. The arbitration provision contains a sub-provision notifying the contractor of his right to opt out of the arbitration provision within fifteen days of the date of the ICA ("opt out sub-provision"); the opt out sub-provision provides that execution of the ICA did not hinge on accepting the arbitration provision:

5

> i. <u>Contractor's Right to Opt Out of this Arbitration Provision</u>. Arbitration is not a mandatory condition of Contractor's relationship with LaserShip. If Contractor does not want to be subject to this Arbitration Provision, Contractor may opt out of this Arbitration Provision by notifying LaserShip in writing of such desire within fifteen (15) days of the Effective Date of this Agreement, which writing must be delivered by U.S. Mail, or by any nationally recognized delivery service (FedEx, etc.), or by hand delivery to LaserShip, Inc., 1912 Woodford Road, Vienna, VA 22182, ATTN: Delivery Resources. The original or a copy of Contractor's notice shall be maintained by LaserShip. Such unilateral election by Contractor shall not result in termination of this Agreement or any other agreement between the Parties or any form of penalty, retaliation, or disadvantaging of Contractor by LaserShip.

*Id.* at 57, 126. Neither Buckmire nor Nardone allege that they elected to opt out of the arbitration provision. *See generally* Compl.; Dkt. 20-1 at 10.

On December 4, 2020, Plaintiffs filed a Complaint (Dkt. 1) in the United States District Court for the Eastern District of Virginia, seeking class certification and alleging that Defendant (1) violated Massachusetts law concerning the classification of independent contractors and wage payment, Mass. Gen. Laws ch. 149, §§ 148, 148B; (2) violated Massachusetts law concerning overtime pay, Mass. Gen. Laws ch. 151, § 1A; and (3) were unjustly enriched. Compl. ¶¶ 27–39.

On January 13, 2021, Defendant filed a Motion to Compel Arbitration (Dkt. 20), seeking to compel Plaintiffs to individual, bilateral arbitration pursuant to the arbitration provision in the ICA. Dkt. 20 at 1. Defendant argues primarily that the VUAA governs the arbitration provision and requires Plaintiffs to arbitrate their claims, except the availability of class arbitration. *See* Dkt. 20-1 at 6. Defendant also argues that the arbitration provision validly waives class proceedings. *See id.* In opposition, Plaintiff argues that under Virginia choice-of-law rules, Massachusetts law governs Plaintiffs' claims and the class action waiver violates Massachusetts law. *See* Dkt. 22 at 2–3. Plaintiffs also assert that the Court, not an arbitrator, must decide whether the arbitration is enforceable and what law applies to Plaintiffs' claims. *Id.* at 16.

On November 17, 2021, this case was reassigned to United States District Judge Patricia

6

Tolliver Giles.

## II. LEGAL FRAMEWORK

### A. Choice-of-Law

It is well-established that when an action is before a federal district court based on diversity of citizenship, the court must apply the relevant law of the state in which it sits, including choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Limbach Co. v. Zurich Am. Insur. Co.*, 396 F.3d 358, 361 (4th Cir. 2005). Thus, this Court must apply Virginia choice-of-law rules.

Under Virginia law, choice-of-law provisions are looked at favorably and courts should give such provisions "full effect except in unusual circumstances." *Run Them Sweet, L.L.C. v. CPA Glob. Ltd.*, 224 F. Supp. 3d 462, 465 (E.D. Va. 2016) (internal quotation marks omitted) (quoting *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999)); *see Zaklit v. Glob. Linguist Sols., L.L.C.*, No. 1:14-cv-314, 2014 WL 3109804, at *5 (E.D. Va. July 8, 2014) ("Virginia has long recognized that parties to a contract may agree in advance which jurisdiction's law will apply to their transaction."). "The only intimations that Virginia might not enforce the parties' choice-of-law provision in a contract concern situations in which there was no reasonable basis for the parties' choice or where one of the parties was misled into agreeing to the provision." *Faltings v. Int'l Bus. Machs. Corp.*, No. 87–1123, 1988 WL 83316, at *3 (4th Cir. Aug. 4, 1988) (unpublished table decision) (internal quotation marks omitted). "Thus, absent a showing that the provisions of the clause 'are unfair or unreasonable, or are affected by fraud or unequal bargaining power,' or that the parties did not clearly intend for the designated law to govern the terms of the contract, [Virginia courts] will give full force to choice-of-law provision[s] in a contract." *Senture, L.L.C. v. Dietrich*, 575 F. Supp. 2d 724, 727 (E.D. Va. 2008) (internal citations omitted) (quoting

*Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 397 S.E.2d 804, 807 (Va. 1990), then citing *Black v. Powers*, 628 S.E.2d 546, 555 (Va. Ct. App. 2006)).

### B. Agreements to Arbitrate

Virginia law and public policy favors arbitration. *See TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.*, 557 S.E.2d 199, 202 (Va. 2002); *Giordano ex rel. Est. of Brennan v. Atria Assisted Living, Virginia Beach, L.L.C.*, 429 F. Supp. 2d 732, 735 (E.D. Va. 2006). "A party cannot be compelled to submit to arbitration unless he has first agreed to arbitrate." *Mission Residential, L.L.C. v. Triple Net Props., L.L.C.*, 654 S.E.2d 888, 890 (Va. 2008) (quoting *Doyle & Russell, Inc. v. Roanoke Hosp. Ass'n*, 193 S.E.2d 662, 666 (Va. 1973)). Agreements to arbitrate must "be applied according to state contract law, and the agreement to arbitrate a conflict must be interpreted like any other element of a contract." *Giordano*, 429 F. Supp. 2d at 735. Under Virginia law, contracts "are subject to basic rules of interpretation" and "are construed as written, without adding terms that were not included by the parties." *TM Delmarva Power*, 557 S.E.2d at 200. "Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *Id.*

### III. DISCUSSION

The parties dispute whether the arbitration agreement is enforceable and whether Virginia or Massachusetts substantive law applies, despite the choice-of-law provision in the ICA specifying that Virginia law applies to "any disputes and claims arising under, out of, or in connection with or relating to [the ICA.]" Dkt. 20-2 at 53, 122; *see* Dkt 20-1 at 14–18; Dkt. 22 at 5–12. The parties also dispute the enforceability of the class action waiver contained in the ICA. *See* Dkt 20-1 at 14–18; Dkt. 22 at 8–10. If the Court were to find the class action waiver unenforceable, the ICA specifies that the entire arbitration provision would be rendered null and

8

void. *See* Dkt. 20-2 at 56, 125. For the reasons explained more fully below, the Court finds the class action waiver is enforceable, that a valid agreement to arbitrate exists under the VUAA, and that the dispute over what substantive law applies to Plaintiffs' claims is properly within the province of the arbitrator.

### A.      The ICA's Class Action Waiver Is Enforceable

As a threshold matter and because it bears on the enforceability of the arbitration provision in its entirety, the Court turns to the question of whether the class action waiver is enforceable. The class action waiver in the arbitration provision provides that if a court found the class action waiver unenforceable,[2] the class action waiver was not severable and the arbitration provision would be rendered null and void in its entirety. *See id.* at 56, 125. Accordingly, the first question for this Court is whether the class action waiver is enforceable. Plaintiffs argue that under Virginia choice-of-law rules, Massachusetts substantive law applies; thus, because the class action waiver violates Massachusetts law, the class action waiver is unenforceable and renders the arbitration provision null and void. *See* Dkt. 22 at 8–9. Defendant counters that the class action waiver is enforceable because class actions are not permitted under Virginia law. Dkt. 20-1 at 14.

Plaintiffs and Defendant both correctly summarize the validity of class action waivers under Massachusetts and Virginia substantive law. *See, e.g.*, *Waithaka v. Amazon, Inc.*, 966 F.3d 10, 32 (1st Cir. 2020) (citing Mass. Gen. Laws. ch. 149, § 148) (finding that "Massachusetts law specifically precludes the waiver of the right to bring class claims arising under the Wage Act and Independent Contractor Misclassification Law"); *Casey v. Merck & Co.*, 722 S.E.2d 842, 846 (Va. 2012) (stating that "Virginia jurisprudence does not recognize class actions" such that "[u]nder

---

[2] The delegation sub-provision in the arbitration provision provides that "the issue of the availability of class, collective, consolidated, or representative arbitration of claims" shall not be delegated to the arbitrator and "shall be reserved." *Id.* at 55–56, 124–25.

Virginia law, a class representative who files a putative class action is not recognized as having standing to sue in a representative capacity on behalf of the unnamed members of the putative class"). Thus, because the ICA's class action waiver would be invalid under Massachusetts law and valid under Virginia law, this Court must determine whether Massachusetts law displaces the parties' contractual choice of Virginia law.

As stated, because this Court sits in diversity jurisdiction, it applies Virginia choice-of-law rules. *See Klaxon*, 313 U.S. at 496–97. It is undisputed that the ICA contains a broad choice-of-law provision naming Virginia law as controlling.[3] *See* Dkt. 20-2 at 53–54, 122–23. "Virginia's courts have traditionally been reluctant to displace contractual choice-of-law provisions, absent a showing of unconscionability." *Faltings*, 1988 WL 83316, at *3 (citing *Tate v. Hain*, 25 S.E.2d 321, 324 (Va. 1943)). Notably, Virginia has "explicitly rejected . . . the approach advocated by the Restatement (Second) of Conflicts of Laws," *Hatfill v. New York Times Co.*, 459 F. Supp. 2d 462, 465 (E.D. Va. 2006) (citing *McMillan v. McMillan*, 253 S.E.2d 662, 664 (Va. 1979), which considers whether application of the law of the chosen state "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination

---

[3] The choice-of-law provision provides:

> 19. Governing Law. This Agreement shall be governed by the laws of the Commonwealth of Virginia, both as to interpretation and performance, without regard to the choice of law rules of such Commonwealth or any other jurisdiction. Virginia law shall govern any disputes and claims arising under, out of, or in connection with or relating to this Agreement, any prior agreements between the parties, any current or prior relationship between the parties, any other dealings between the parties, or to any aspect of the relationship between the parties to this Agreement. Contractor hereby expressly waives, to the fullest extent legally possible, all rights and protections of any state law other those contained in the laws of the state of Virginia.

Dkt. 20-2 at 53–54, 122–23.

of the particular issue" and whose law would otherwise apply in the absence of a choice-of-law provision, Restatement (Second) of Conflicts of Laws § 187(2). Thus, Virginia courts "do[] not look at the public policy of other states in making its choice of law decisions." *Precision Pipeline, L.L.C. v. Dominion Transmission, Inc.*, No. 3:16-cv-00180, 2017 WL 1100903, at *3 (E.D. Va. Mar. 23, 2017); *see Faltings*, 1988 WL 83316, at *3 (applying Virginia choice-of-law rules and enforcing the parties' choice-of-law provision even though application of the law of the chosen state (New York) conflicted with another state's (New Jersey) public policy).[4]

Thus, under Virginia choice-of-law rules, Massachusetts law does not oust the parties' contractual choice of Virginia law and the parties' class action waiver is enforceable. *Casey*, 722 S.E.2d at 846 (stating that "Virginia jurisprudence does not recognize class actions" such that "[u]nder Virginia law, a class representative who files a putative class action is not recognized as having standing to sue in a representative capacity on behalf of the unnamed members of the putative class"); *Wade v. Danek Med., Inc.*, 182 F.3d 281, 287 n.7 (4th Cir. 1999) ("Indeed,

---

[4] Plaintiffs rely heavily on *Reynoso v. LaserShip, Inc.*, 322 F. Supp. 3d 211 (D. Mass. 2018) to support their argument that Massachusetts law applies under Virginia choice-of-law rules to Plaintiffs' claims. *See* Dkt. 22 at 6–8. The Massachusetts district court in *Reynoso* found that a Virginia district court would apply Massachusetts substantive law on transfer because "Virginia courts will set aside choice of law provisions where application of the law of the chosen state would be adverse to a fundamental policy of a state which has a materially greater interest than the chosen state." 322 F. Supp. 3d at 216–17 (citing *Zaklit*, 2014 WL 3109804, at *21). To support this assertion, the court in *Zaklit* relied on a Virginia circuit court case that did not cite to the Virginia Supreme Court and instead cited two cases from the United States District Court for the Western District of Virginia and the Restatement (Second) of Conflicts of Laws. *See Malpractice Rsch., Inc. v. Norman*, No. 92560, 1991 WL 11031257, at *1 (Va. Cir. Ct. May 22, 1991); Restatement (Second) of Conflicts of Laws § 187(2). As the Fourth Circuit notes in an unpublished decision, citing a Virginia Supreme Court case, "Virginia's courts have traditionally been reluctant to displace contractual choice-of-law provisions, absent a showing of unconscionability." *Faltings*, 1988 WL 83316, at *3 (citing *Tate*, 25 S.E.2d at 324). The Fourth Circuit also notes that "Virginia has not generally adopted the Restatement (Second)'s flexible approach to choice-of-law analysis[.]" *Id.* As such, this Court will follow the view of the Fourth Circuit in *Faltings* and declines to adopt the Massachusetts district court's reasoning in *Reynoso*.

Virginia itself has no class action provision analogous to Federal Rule [of Civil Procedure] 23."); *Moore v. Nat'l Wildlife Fed'n*, No. 10884, 1987 WL 488717, at *1 (Va. Cir. Ct. Sept. 11, 1987) (stating similar); *Commonwealth v. Supportkids, Inc.*, No. CL08–728, 2008 WL 8201353, at *5 (Va. Cir. Ct. Oct. 1, 2008) (noting that "Virginia is not a class action state" and citing a Virginia Supreme Court case to support the proposition that a party cannot "acquire standing to sue in a representative way by asserting the rights of others").

### B.   A Valid and Enforceable Agreement to Arbitrate Exists Under the VUAA

Next, the Court turns to the question of whether the ICA's arbitration provision is valid and enforceable under the VUAA. As stated above, the ICA contains a broad choice-of-law provision stating that the ICA shall be controlled by Virginia law "both as to interpretation and performance" as to "any disputes and claims arising under, out of, or in connection with or relating to [the ICA], any prior agreements between the parties, any current or prior relationship between the parties, any other dealings between the parties, or to any aspect of the relationship between the parties to [the ICA]." Dkt. 20-2 at 53–54, 122–23. The arbitration provision also contains a clause stating, in relevant part, that covered claims "shall be submitted to final and binding arbitration . . . in accordance with . . . the arbitration laws of the State of Virginia." *Id.* at 54–55, 123–24. Under Virginia law, "where, as here, 'a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied.'" *Olawole v. ActioNet, Inc.*, 258 F. Supp. 3d 694, 705 (E.D. Va. 2017) (quoting *Settlement Funding, L.L.C. v. Von Neumann–Lillie*, 645 S.E.2d 436, 438 (Va. 2007)). Thus, in deciding Defendant's Motion to Compel Arbitration, the Court is confined to the narrow question of whether arbitration may be compelled under Virginia law.

As noted above, Virginia courts view choice-of-law provisions favorably and give such provisions "full effect except in unusual circumstances," *Run Them Sweet*, 224 F. Supp. 3d at 465,

such as "situations in which there was no reasonable basis for the parties' choice or where one of the parties was misled into agreeing to the provision[,]" *Faltings*, 1988 WL 83316, at *3 (internal quotation marks omitted), or evidence "that the provisions of the clause are unfair or unreasonable, or are affected by fraud or unequal bargaining power, or that the parties did not clearly intend for the designated law to govern the terms of the contract," *Senture*, 575 F. Supp. 2d at 727 (internal citations and quotation marks omitted).

Plaintiffs contest the validity of the choice-of-law provision but fail to raise "unusual circumstances" that would merit non-enforcement of the choice-of-law provision. Plaintiffs do not allege there was "no reasonable basis" for Defendant to specify Virginia law as controlling.[5] *Faltings*, 1988 WL 83316, at *3. Neither do Plaintiffs allege that they were misled into agreeing to the choice-of-law provision, or that the provision is "affected by fraud or unequal bargaining power, or that the parties did not clearly intend for the designated law to govern the terms of the contract." *Senture*, 575 F. Supp. 2d at 727.

Plaintiffs argue that the choice-of-law provision and application of Virginia law is unfair and unreasonable because Virginia law is "contrary to the public policy" of Massachusetts, which has a "greater interest [in the case] and whose law would otherwise govern." Dkt. 22 at 11 (citing *In re Land Am. Fin. Grp., Inc.*, No. 08-35994-KRH, 2011 WL 5149100, at *3 (Bankr. E.D. Va., Oct. 23, 2011). However, Plaintiffs' choice-of-law arguments as to their wage and overtime claims are premature. As discussed *infra* section III.C, choice-of-law is an issue the parties have delegated to the arbitrator and, thus, Plaintiffs may raise their choice-of-law dispute before the arbitrator.[6]

---

[5] Nor would such an argument be persuasive as Defendant is allegedly headquartered in Vienna, Virginia. Dkt. 20-1 at 6.

[6] Accordingly, Plaintiffs' reliance on *Sanchez* is inapposite. In that case, the Court declined to enforce the parties' Virginia choice-of-law provision, finding its scope too narrow to encompass

*See Gibbs v. Stinson*, 421 F. Supp. 3d 267, 305 (E.D. Va. 2019), *aff'd sub nom. Gibbs v. Sequoia Cap. Operations, L.L.C.*, 966 F.3d 286 (4th Cir. 2020) (stating that once the court determines there is a valid arbitration agreement, choice-of-law questions "must be determined in the first instance by the arbitrator" (internal quotation marks omitted)).

Thus, the Court may grant Defendant's Motion to Compel Arbitration if a valid arbitration agreement exists under the VUAA. Plaintiffs challenge the arbitration provision in its entirety and specifically challenge the delegation sub-provision,[7] arguing that the Court, not the arbitrator, must decide the issue of the enforceability of the arbitration provision itself. Dkt. 22 at 17–18. Because Plaintiffs have specifically challenged the delegation sub-provision, this Court is permitted to consider the enforceability of the arbitration provision. *See Gibbs*, 966 F.3d at 291 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).

Under the VUAA, "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law

---

the plaintiffs' Massachusetts wage claims. 2012 WL 3730636, at *6. In the present case, however, the Court finds that the delegation sub-provision clearly submits the arbitrability of choice-of-law disputes to the arbitrator. *See infra* section III.C.

[7] The delegation sub-provision provides:

> c. <u>Issues Delegated to an Arbitrator.</u> An arbitrator shall decide all issues arising out of or relating to the interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of this Arbitration Provision or any portion of it, except the issue of the availability of class, collective, consolidated, or representative arbitration of claims, which issue shall be reserved.

Dkt. 20-2 at 55–56, 124–25.

14

or in equity for the revocation of any contract." Va. Code § 8.01-581.01.[8] While the VUAA does not specify what grounds "exist[ing] at law or in equity" would merit the revocation of a contract, under the FAA, such grounds include "fraud, duress, and unconscionability." *See Hawthorne v. Bj's Wholesale Club*, No. 3:15-cv-572, 2016 WL 4500867, at *5 (E.D. Va. Aug. 26, 2016) (internal quotation marks omitted) (citing *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001)).

The Court finds a valid, enforceable agreement to arbitrate under the VUAA. There is a provision in a written contract to submit to arbitration: paragraph 22 of the ICA. *See* Dkt. 20-2 at 54–58, 123–27. Plaintiffs do not dispute the existence of this arbitration provision. Thus, this arbitration provision is "valid, enforceable and irrevocable" unless "grounds [] exist at law or in equity" for its revocation. Va. Code § 8.01-581.01.

Plaintiffs do not allege any kind of fraud, duress, or unconscionability, and a review of the facts reveals no such problems with the provision itself or the means by which it was adopted. Defendant alleges that workers seeking to sign an ICA could review the ICA on paper or electronically, could ask questions about the ICA, and were given time and opportunity to consult other people before signing. Dkt. 20-1 at 7. Critically, workers were given the option to opt out of the arbitration provision. Dkt. 20-2 at 57, 126; *see Hawthorne*, 2016 WL 4500867, at *6 (noting that the plaintiffs were given the option to opt out of arbitration and finding "no procedural inequity or bad faith" in the arbitration agreement). Paragraph 22(i) of the ICA gave workers fifteen days from the effective date of the ICA to notify Defendant in writing that they were opting out and stated that electing to opt out did not affect the execution of the rest of the ICA or result in "any

---

[8] This provision of the VUAA is "nearly identical" to Section 2 of the FAA. *NC Fin. Sols. of Utah, L.L.C. v. Commonwealth ex rel. Herring*, 854 S.E.2d 642, 645 n.3 (Va. 2021), *cert. denied sub nom. NC Fin. Sols. of Utah, L.L.C. v. Virginia*, 142 S. Ct. 582 (2021).

form of penalty, retaliation, or disadvantaging" to the worker. Dkt. 20-2 at 57, 126. Defendant alleges, and Plaintiffs do not contest, that neither Buckmire nor Nardone elected to opt out of the arbitration provision. *See generally* Compl.; Dkt. 20-1 at 10.

Plaintiffs argue that the class action waiver renders the entire arbitration provision "unenforceable as violative of Massachusetts public policy." Dkt. 22 at 3 (citing *Waithaka*, 966 F.3d at 29–35). In *Waithaka*, the First Circuit affirmed the district court's denial of the defendant's motion to compel arbitration, finding that because class action waivers violated Massachusetts public policy, a class action waiver in an arbitration agreement rendered the agreement unenforceable, regardless of the agreement's Washington choice-of-law provision. 966 F.3d at 35.

However, critically, in *Waithaka*, the district court, sitting in diversity in Massachusetts, applied Massachusetts choice-of-law rules. *See Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 345 (D. Mass. 2019). Massachusetts follows the Restatement (Second) of Conflicts of Laws in determining what state's substantive law applies, which provides that the parties' contractual choice-of-law will apply unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflicts of Laws § 187(2). On the other hand, Virginia has not endorsed the approach of the Restatement (Second), "does not look at the public policy of other states in making its choice of law decisions[,]" *Precision Pipeline*, 2017 WL 1100903, at *3, and "looks favorably upon choice-of-law clauses in a contract . . . except in unusual

16

circumstances," *Run Them Sweet*, 224 F. Supp. 3d at 465 (quoting *Hitachi Credit Am. Corp.*, 166 F.3d at 624). Thus, that class action waivers are disfavored by Massachusetts public policy is of no effect and does not constitute a ground justifying revocation of the arbitration provision here.

Plaintiffs also invoke the prospective waiver doctrine, arguing that the forum selection and choice-of-law provisions in the ICA "operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies," thus, "depriv[ing] out-of-state workers of the wage protections of [Massachusetts]." Dkt. 22 at 13. However, as Defendant correctly notes, the prospective waiver doctrine applies to attempted waivers of *federal* substantive statutory rights. *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017) ("Under this 'prospective waiver' doctrine, courts will not enforce an arbitration agreement if doing so would prevent a litigant from vindicating federal substantive statutory rights." (citing *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–36 (2013); *14 Penn Plaza L.L.C. v. Pyett*, 556 U.S. 247, 273–74 (2009); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991))).

In this case, Plaintiffs do not argue, nor is there evidence to support the position, that enforcing the arbitration and choice-of-law provisions pursuant to Virginia law would prospectively waive Plaintiffs' rights under federal law. *See Green v. Kline Chevrolet Sales Corp.*, No. 2:19-cv-127, 2019 WL 3728266, at *8 (E.D. Va. Aug. 7, 2019) (compelling arbitration under the FAA and finding that a choice-of-law provision directing the application of Virginia substantive law "necessarily include[d] federal law"). In fact, while the choice-of-law provision specifies that workers waive "all rights and protections of *any state law* other [than] those contained in the laws of the state of Virginia," there is no waiver of federal law. Dkt. 20-2 at 53–54, 122–23 (emphasis added). *Cf. Gibbs*, 966 F.3d at 293 (finding an arbitration agreement preventing plaintiffs "from effectively vindicating any federal statutory claims . . . violate[d] the

prospective waiver rule").

Plaintiffs are primarily concerned that they will not be permitted to "vindicat[e] their Massachusetts statutory wage rights, which are far more favorable to workers than the comparable Virginia law" and will be left "wholly without a remedy" for some of their claims. Dkt. 22 at 11–12. However, the fact that Virginia potentially affords its workers narrower overtime and wage rights than Massachusetts does not mean Plaintiffs are "wholly" left without federal remedies or other state remedies under Virginia law. Furthermore, Plaintiffs cite no authority to support the proposition that a valid arbitration agreement should be revoked because the substantive law that potentially applies is unfavorable to one of the parties. *See Precision Pipeline*, 2017 WL 1100903, at *2 (a party's contention that enforcement of a Virginia choice-of-law provision violated Pennsylvania public policy was not an "unusual circumstance" warranting non-enforcement of the provision under the FAA). The prospective waiver doctrine does not apply here and does not constitute a ground justifying revocation of the arbitration provision.

### C. Plaintiffs' Choice-of-Law Dispute is Within the Province of the Arbitrator

Plaintiffs' contend their dispute over choice-of-law—that Massachusetts substantive law and not Virginia substantive law applies to their wage and overtime claims—is not arbitrable. This presents two questions: (1) who decides the question of arbitrability, the court or arbitrator, and (2) if the court must determine arbitrability, whether the particular dispute is arbitrable. *See, e.g., Brenco Enters. v. Bitesquad.com, L.L.C.*, 297 F. Supp. 3d 608, 611 (E.D. Va. 2018). Under Virginia law, "it is the province of the courts to determine the threshold question of arbitrability, given the terms of the contract between the parties." *Roanoke Hosp. Ass'n*, 193 S.E.2d at 666. "The language of the contract determines whether a particular dispute is arbitrable." *Brush Arbor Home Constr., L.L.C. v. Alexander*, 823 S.E.2d 249, 251 (Va. 2019). Thus, "in the absence of a clear agreement showing that the parties intended that the arbitrator decide questions of

arbitrability, that question is to be resolved by the court." *Waterfront Marine Const., Inc. v. N. End 49ers Sandbridge Bulkhead Grps. A, B & C*, 468 S.E.2d 894, 899 (Va. 1996).

Here, the delegation sub-provision states in relevant part that the arbitrator "shall decide all issues arising out of or relating to the interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of this Arbitration Provision or any portion of it[.]" Dkt. 20-2 at 55–56, 124–25. By requiring that any challenge to the interpretation or application of the arbitration provision—"and not merely the [] agreement generally"—be submitted for arbitration, this language "clearly and unmistakably delegates arbitrability issues to an arbitrator." *Hengle v. Asner*, 433 F. Supp. 3d 825, 850 (E.D. Va. 2020), *mot. to certify appeal granted*, No. 3:19-cv-250, 2020 WL 855970 (E.D. Va. Feb. 20, 2020), *and aff'd sub nom. Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021). Thus, this Court finds that it is properly for the arbitrator to determine the arbitrability of the choice-of-law for Plaintiffs' substantive wage and overtime claims.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Compel Arbitration is

**GRANTED**. It is further ordered, pursuant to Va. Code Ann. § 8.01-581.02,[10] that the present action is

**STAYED** pending the outcome of Plaintiffs' individual, bilateral arbitration.

It is **SO ORDERED**.

September 29th, 2022
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge

---

[10] Va. Code Ann. § 8.01-581.02 states that "[a]ny action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section."